OPINION
 

 DAY, Justice.
 

 Appellants, the cities of Irving, Euless and Grapevine, Texas (“the Cities”) bring this appeal from a declaratory judgment action which upheld the constitutionality of a state law giving municipal airport authorities the power to make land-use decisions for property within the geographic boundaries of the airport. In ten points of error, the Cities claim the trial court erred in holding the law constitutional, in granting summary judgment for appellees, in denying summary judgment for the Cities, and in awarding costs to appellees.
 

 The Cities describe the issue before us as whether the Legislature may preclude home-rule cities from protecting the health, safety and welfare of their citizens. The Board says the matter is one which affects the future of the primary airport in North Texas and the second-busiest airport in the world. At stake are the integrity of local zoning laws and a $3.5 billion dollar airport expansion. Because we conclude the legislative enactments challenged by the Cities are not unconstitutional, we overrule appellant’s points of error and affirm the judgment of the trial court.
 

 PROCEDURAL SUMMARY
 

 In or around 1965, the cities of Dallas and Fort Worth entered into a Contract and Agreement to construct a regional airport
 
 [1]
 
 (“D/FW Airport”). In 1968, the cities of Dallas and Fort Worth signed a contract creating the Dallas/Fort Worth International Airport Board (“the Board”), pursuant to the Texas Municipal Airports Act (“the Act”), to operate D/FW Airport.
 
 [2]
 
 The Board has no separate governmental authority.
 
 [3]
 
 Irving, Euless and Grapevine annexed territory on which the airport was to be located but did not attempt to interfere with the airport’s construction or operation through local zoning ordinances.
 

 In 1971, the Board issued a Master Plan for D/FW Airport, detailing land uses for the facility until the year 2001,
 
 [4]
 
 and each of the Cities allowed D/FW Airport to build and
 
 *460
 
 expand in accordance with the Master Plan.
 
 [5]
 
 Between 1987 and 1989,
 
 [6]
 
 the Board announced plans for a $3.5 billion dollar expansion to D/FW Airport, which would include the construction of two new runways. The Board maintains the construction of the additional facilities is necessary to handle projected increases in traffic to more than one hundred million passengers annually by the year 2010.
 
 [7]
 
 The Cities opposed the expansion plan, and in 1989 and 1990 amended their zoning ordinances to essentially require the Board to submit a revised site plan and environmental impact information in order to obtain the necessary special and governmental use permits.
 

 In 1990, the Board sought a declaratory judgment in district court in Dallas County that the zoning ordinances were preempted by the Act and a scheme of federal statutes and regulations. In this action (the “1990 suit”), the Cities counterclaimed for a declaration that the zoning ordinances were not preempted or, alternatively, that the Act was unconstitutional under the “home rule” amendment to the Texas Constitution.
 
 [8]
 

 The Dallas County district court severed out fact-intensive issues regarding the validity of the zoning ordinances under the Zoning Enabling Act (creating what will be referred to as the “1991 suit”)
 
 [9]
 
 and rendered a declaratory judgment in the 1990 suit which held the zoning ordinances were not preempted by the Act or by federal statutes or regulations. As a result, the court dismissed without prejudice the Cities’ conditional prayer for a declaratory judgment concerning the unconstitutionality of the Act, and the Cities did not appeal from this dismissal. The Dallas Court of Appeals affirmed the district court’s ruling in the 1990 suit on March 31, 1993.
 
 [10]
 
 The - Board then appealed to the Texas Supreme Court.
 

 Meanwhile, in the spring of 1993, the Legislature passed Senate Bill 348, which amended portions of the Act and which contained the following language:
 

 If the constituent public agencies of a joint board are populous home-rule municipalities
 
 [i.e.,
 
 home-rule municipalities whose population exceeds 400,000], these powers [to plan, establish, develop, construct, enlarge, improve, maintain, equip, operate, regulate, protect and police municipal airports] are exclusively the powers of the board regardless of whether all or part of the airport, air navigation facility, or airport hazard area is located within or outside the territorial limits of any of the constituent public agencies and another municipality, county, or other political subdivision shall not enact or enforce a zoning ordinance, subdivision regulation, construction code, or any other ordinance purporting to regulate the use or development of property applicable within the geographic boundaries of the airport as it may be expanded.
 

 Senate Bill 348 was signed by the governor on May 6,1993 and became effective immediately.
 

 The Cities announced their immediate plans to challenge the constitutionality of Senate Bill 348
 
 [11]
 
 , and as a result, the Board filed suit in Tarrant County on June 8, 1993, (the “1993 suit”) seeking a declaratory judgment that the law is valid and constitutional. The Attorney General and three primary users of D/FW Airport (American Airlines, Delta Airlines and United Parcel Service) intervened to support the constitutionality of
 
 *461
 
 Senate Bill 348.
 
 [12]
 
 The Cities then filed a plea in abatement, claiming that the Tarrant County trial court should have abated the 1993 suit in light of the prior pending ease in Dallas County. At a hearing on August 12, 1993, the plea in abatement was denied. The Tarrant County court also issued an injunction barring the Cities from challenging the constitutionality of Senate Bill 348 in any other court.
 

 On September 29, 1993, nearly four months after the Board filed its declaratory judgment action in Tarrant County, the Texas Supreme Court issued an order in the 1990 suit, remanding it to the Dallas County district court to consider the validity, constitutionality and applicability of Senate Bill 348 to the cities.
 
 [13]
 
 The Cities again requested that the trial be abated in Tarrant County, and that request was denied a second time by the district court. In
 
 Dallas/Fort Worth Int’l Airport Bd. v. City of Irving,
 
 868 S.W.2d 750 (Tex.1993, orig. proceeding) (per curiam)
 
 (“DFW II”),
 
 the Texas Supreme Court conditionally granted a writ of prohibition against the Tarrant County court preventing it from taking any action interfering with the Dallas County court’s consideration of the constitutionality of Senate Bill 348. The Court directed the Tarrant County district court to delete the injunction and to “issue no order interfering with or attempting to control, directly or indirectly, the remanded litigation,”
 
 id.
 
 at 751, but also said that “[a]ll relief not expressly granted is denied.”
 
 Id.
 

 The Tarrant County court dissolved the injunction in compliance with the ruling, and the Tarrant County trial judge sought clarification from the Texas Supreme Court as to whether he could proceed with the 1993 case. Specifically, in a letter to the clerk of the Court, Judge Jeff Walker wrote that his “reading of the per curiam opinion is that I may proceed but I am prohibited from enjoining the Cities from pursuing the constitutionality question in the Dallas court or elsewhere. If I am incorrect and the Supreme Court has abated the proceedings in the 96th District Court, I need to know that.” The Cities filed a
 
 Motion for Rehearing
 
 in the Texas Supreme Court also seeking clarification of whether the Court’s opinion abated the Tarrant County suit. The Texas Supreme Court denied rehearing and, according to the Board, therefore implicitly denied clarification of the prohibition ruling. The Tarrant County court then rendered summary judgment for the Board and interve-nors and held Senate Bill 348 to be constitutional. In March, 1994, the Cities again requested the Texas Supreme Court issue an unconditional writ of prohibition; the request was denied on September 1, 1994.
 

 In June, 1994, the Dallas County district court decided not to rule on the cross-motions for summary judgment in the 1990 case, advising the parties that a “ruling which either agrees or disagrees with the prior ruling of another district court on the identical issues would seem to serve no useful purpose.”
 
 [14]
 

 On January 12, 1995, the Dallas County district court rendered a summary declaratory judgment holding that the Act preempts the Cities’ zoning ordinances and denying their request for a declaration that the Act, as amended by Senate Bill 348, is unconstitutional.
 

 POINT OF ERROR ONE
 

 The Cities first complain that the trial court erred in denying appellants’ joint plea in abatement because there was a prior pending case in Dallas County. The Cities first filed their plea in abatement on July 2, 1993, less than one month after the Board filed its 1993 suit asking the court to determine the constitutionality of Senate Bill 348. The trial court denied the plea in abatement
 
 *462
 
 on August 24, 1993. After the Texas Supreme Court remanded the issue of the constitutionality, validity and applicability of Senate Bill 348 to the Dallas County trial court on September 29, 1993, in
 
 “DFW I,”
 
 appellants again asked the Tarrant County court to abate the 1993 suit. This plea in abatement, filed by the Cities on October 1, 1993, was also denied. After the Texas Supreme Court granted its conditional writ barring the Tarrant County court from taking any action which interfered with the Dallas County court’s action
 
 [15]
 
 , the Cities renewed their request for the Tarrant County court to abate the case. This October 28, 1993 request for abatement was effectively denied on February 24, 1994, when the Tarrant County court entered its final judgment.
 

 The Cities, relying on
 
 Wyatt v. Shaw Plumbing Co.,
 
 760 S.W.2d 245, 247 (Tex.1988), argue that the issues in the 1993 Tar-rant County suit are inherently interrelated to issues pending in Dallas County. The Cities assert that the Board could have raised the constitutionality of Senate Bill 348 as a defense in the 1991 severed case, which included the Cities’ request for declaratory and injunctive relief. Had the Board done so, the Cities’ contend, all of the issues in both cases could have been resolved. Finally, the Cities argue that when the Texas Supreme Court remanded the 1990 suit back to the Dallas County court in
 
 “DFW I,”
 
 it gave the Dallas County court “exclusive jurisdiction to consider the validity, constitutionality and applicability of Senate Bill 348”, and that when the Texas Supreme Court issued the conditional writ of prohibition in
 
 “DFW II,”
 
 it should have been clear that the Tar-rant County trial court did not have jurisdiction to consider the constitutionality of Senate Bill 348.
 

 The Board also relies upon
 
 Wyatt
 
 and argues that suits are “inherently interrelated” for purposes of abatement only when one is a compulsory counterclaim to the other and when the parties to one are or can be made parties to the other.
 
 Wyatt,
 
 760 S.W.2d at 247-48. The Board then looks to Tex.R.Civ.P. 97(a), which defines a compulsory counterclaim as “any claim within the jurisdiction of the court, not the subject of a pending action, which at the time of filing the pleading the pleader has against any opposing party.” The Board argues that at the time it filed its responsive pleading in the 1990 Dallas County suit, Senate Bill 348 had not yet been passed and that therefore any contention regarding its constitutionality was not a compulsory counterclaim due to a lack of ripeness.
 

 In addition to the ripeness issue, the Board argues that the abatement was properly denied because a second-filed suit will not be abated in favor of a first-filed suit if the second suit involves separate and distinct causes of action, and it relies on
 
 McCurdy v. Gage,
 
 123 Tex. 558, 69 S.W.2d 56, 60 (1934) and
 
 Justin Indus., Inc. v. Whiteside,
 
 606 S.W.2d 737, 741 (Tex.Civ.App.—Fort Worth 1980, writ dism’d) for this proposition. The Board says that at the time the 1993 Tarrant County suit was filed, the only cause of action pending in Dallas County was the 1991 suit, which included the Board’s declaratory judgment action seeking to have the zoning ordinances declared violative of the Zoning Enabling Act and the Cities’ action for in-junctive relief for the alleged zoning violations. The Board says that no cause of action relating to the constitutionality of Senate Bill 348 was pending elsewhere at the time its Tarrant County declaratory judgment action was filed.
 

 The Board disputes the Cities’ contention that the 1993 suit was inherently interrelated to the 1991 suit because the issues in the 1993 suit “could have been raised” in the 1991 suit. The Board says that such an interpretation would eviscerate the
 
 Wyatt
 
 “inherent interrelationship” test because conceivably, any dispute between the parties could be brought as a counterclaim.
 
 Wyatt,
 
 the Board reiterates, involves compulsory, not permissive, counterclaims.
 

 Finally, the Board challenges the Cities’ assertion that the Texas Supreme Court’s actions in the 1990 case compelled abatement
 
 *463
 
 of the 1993 case. The Board says the Texas Supreme Court held the Dallas County district court had exclusive jurisdiction over the
 
 remanded 'proceedings,
 
 not exclusive jurisdiction to consider the
 
 validity, constitutionality and applicability of Senate Bill 348,
 
 as the Cities claim. The Board cites
 
 Gannon v. Payne,
 
 706 S.W.2d 304, 307 (Tex.1986) and
 
 Abor v. Black,
 
 695 S.W.2d 564, 567 (Tex.1985) for the proposition that the pursuit of a parallel second-filed action does not as a general matter interfere with the jurisdiction of the first-filed court.
 

 The
 
 Wyatt
 
 court’s factors to consider in determining whether two suits are inherently interrelated so as to require abatement of the second cause of action, are: (1) whether the claim alleged in the second suit could be classified as a compulsory counterclaim to the first action; and (2) whether the parties in the second action were “persons to be joined if feasible.”
 
 Wyatt,
 
 760 S.W.2d at 247. To be compulsory, a counterclaim must:
 

 (1) be within the jurisdiction of the court; (2) not be the subject of a pending action at the time of filing the answer; (3)
 
 be mature and owned by the pleader at the time of filing the answer;
 
 (4) arise out of the transaction or occurrence that is the subject matter of the primary claim; (5) be against the opposing party in the same capacity in which that party brought suit; and (6) not require the presence of third parties over whom the court cannot acquire jurisdiction for the claim’s adjudication.
 

 Id.
 
 (emphasis added).
 

 It is clear that at the time the 1991 suit was filed in Dallas County, the Board could not have raised in its responsive pleadings the issue of Senate Bill 348’s constitutionality, because the measure had not yet been passed. The Cities do not dispute the Board’s statement that by the time the declaratory judgment cause of action was filed in Tarrant County in June, 1993, the only cause of action pending in Dallas County was the 1991 suit. Thus, the Board’s action could not have been a compulsory counterclaim. We do not find that abatement was mandatory under these circumstances.
 

 Where there is a lack of identity between the parties and issues, the court, in an exercise of its sound discretion, may abate an action for reasons of comity, convenience and orderly procedure, taking into consideration the practical results to be obtained.
 
 Dolenz v. Continental Nat'l Bank of Fort Worth,
 
 620 S.W.2d 572, 575 (Tex.1981). The Tarrant County court
 
 could
 
 have abated the cause of action, but under these facts, it was not an abuse of discretion for it to refuse to do so. At the time the Texas Supreme Court ordered the Tarrant County court to lift the injunction barring the Cities from challenging Senate Bill 348’s constitutionality in any other court, it had given the Dallas County court “exclusive jurisdiction over the remanded proceedings,”
 
 Dallas/Fort Worth Int’l Airport Bd. v. City of Irving,
 
 750 S.W.2d 750, 751 (Tex.1993), not exclusive jurisdiction over the constitutional question. The Tarrant County trial court sought clarification from the Texas Supreme Court to determine whether it should abate at a time when it had squarely before it the ripe issue of Senate Bill 348’s constitutionality. The Tarrant County court’s refusal to abate was not an abuse of discretion. Appellants’ first point of error is overruled.
 

 POINT OF ERROR TWO
 

 In their second point of error, the Cities complain that the trial court erred in granting the Board’s motion and supplemental motion for summary judgment because there were material fact questions involving whether Senate Bill 348 impaired a contract between the Cities and D/FW Airport. The Cities argue that the Letter of Intent and Agreement between the Board and the Cities provided the Board would agree to preserve the sovereignty and financial integrity of the Cities. The Cities say the Board has failed to produce satisfactory summary judgment evidence to rebut their assertion that the parties intended to enter into a binding contract regarding those items.
 

 The Cities cite
 
 Scott v. Ingle Bros. Pacific, Inc.,
 
 489 S.W.2d 554 (Tex.1972), where the Texas Supreme Court reviewed the question of whether an employment contract had been created pursuant to a “purchase agreement” between the parties. The Court held that
 
 *464
 
 “[w]hether the execution of a separate employment agreement was, and is, essential to a mutuality of assent is a question of the intention of the parties.”
 
 Id.
 
 at 555. The Cities then argue that if this court does not agree that on its face, the Letter of Intent and Agreement is a contract between the parties, then it must consider what was the intent of the parties. They then point out that the intent of the parties is a disputed question of fact which cannot be disposed of in a summary judgment.
 

 The Board’s response is three-fold. It first argues that the Cities are not entitled to constitutional protection against impairment of contract by action of the Legislature and relies on
 
 City of Trenton v. New Jersey,
 
 262 U.S. 182, 188, 43 S.Ct. 534, 537, 67 L.Ed. 937, 941-2 (1923) and
 
 Parker County v. Weatherford ISD,
 
 775 S.W.2d 881, 887 (Tex.App.—Fort Worth 1989),
 
 rev’d on other grounds sub
 
 mom;
 
 City of Weatherford v. Parker County,
 
 794 S.W.2d 33 (Tex.1990). In short, the Board says the Cities have no rights under the Contract Clause of either the Federal or State Constitution which Senate Bill 348 could conceivably have violated. Next, the Board argues that the Letter of Intent does not create a binding obligation to preserve the sovereignty of the cities. The Board notes that the Letter of Intent includes the following recital:
 

 At this point in time it is believed desirable to indicate the status of all the questions and problems [relative to the development of DFW Airport] and the parties have agreed to place this status in a “Letter of Intent and Agreement”
 
 as a basic instrument upon which future negotiations and discussions will be directed.
 
 [Emphasis Added.]
 

 The Board claims the language of the document contemplated that further negotiations would take place and that no binding agreement had been reached and further describes the document as a memorandum of terms which could give rise to binding obligations in the future. The Board, too, relies on
 
 Scott
 
 for the proposition that there is no contract without an expression of the parties’ agreement to be bound. The Board says that even if the Letter of Intent created an agreement, the language regarding the sovereignty and financial integrity of the public entities merely indicated the purpose for which the North Texas Regional Airport Committee was formed.
 

 Finally, the Board claims that Senate Bill 348 does not unconstitutionally impair the obligation of the Letter of Intent. The Board says the “sovereignty” of the Cities “is not and has never been absolute, but is subject in all respects to the will of the Legislature,” and relies on Tex. Const, art. XI, § 5. The Board says the right to limit the powers of home-rule cities is an attribute of the State of Texas’ sovereignty which cannot be destroyed by a contract entered into by a political subdivision and recalls the words of Justice Holmes, who said that “One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the state by making a contract about them.”
 
 Hudson County Water Co. v. McCarter,
 
 209 U.S. 349, 357, 28 S.Ct. 529, 531, 52 L.Ed. 828, 832 (1908).
 

 In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that movant is entitled to judgment as a matter of law.
 
 See
 
 Tex.R.Civ.P. 166a(c);
 
 Cate v. Dover Corp.,
 
 790 S.W.2d 559, 562 (Tex.1990);
 
 City of Houston v. Clear Creek Basin Auth.,
 
 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant,
 
 Acker v. Texas Water Comm’n,
 
 790 S.W.2d 299, 301-02 (Tex.1990), and all doubts about the existence of a genuine issue to a material fact are resolved against movant.
 
 Cate,
 
 790 S.W.2d at 562;
 
 Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,
 
 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant.
 
 Id.
 

 In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmov-ant will be accepted as true.
 
 Montgomery v. Kennedy,
 
 669 S.W.2d 309, 311 (Tex.1984);
 
 Farley v. Prudential Ins. Co.,
 
 480 S.W.2d 176, 178 (Tex.1972). Evidence that favors
 
 *465
 
 the movant’s position will not be considered unless it is uneontroverted.
 
 Great Am.,
 
 391 S.W.2d at 47.
 

 We agree with the Board’s assertion that a municipal corporation which exists under the authority of a state has no standing to raise a challenge under the Contract Clause of either the Federal or State Constitution and that a municipality’s sovereignty is dependent upon that of the state. “A municipality is merely a department of the state, and the state may withhold, grant or withdraw powers and privileges as it sees fit.”
 
 City of Trenton,
 
 262 U.S. at 187, 43 S.Ct. at 537, 67 L.Ed. at 941. Based on
 
 Trenton
 
 and
 
 City of Weatherford,
 
 the Cities cannot challenge Senate Bill 348 under either Contract Clause. We need not reach the issue of whether the Letter of Intent and Agreement was intended to be a contract. The trial court did not err in granting the Board’s summary judgment on this basis. Appellants’ second point of error is overruled.
 

 POINTS OF ERROR THREE THROUGH NINE
 

 In points of error three and four, the Cities argue that the trial court erred in granting the Board’s motion and supplemental motion for summary judgment and in denying the Cities’ joint motion for partial summary judgment. In points five through nine, the Cities argue before this court the grounds enumerated in the respective summary judgments. Before we can determine the propriety of the court’s • grant of one summary judgment and denial of the other, we must first evaluate the merits of the arguments on which the summary judgments were based.
 

 In point of error five, the Cities argue the trial court erred in declaring that Senate Bill 348 is not a local or special law in violation of Tex. Const, art. Ill, § 56. The Cities claim that Senate Bill 348 is an unconstitutional attempt to fix a perceived local problem with the host cities.
 

 The “primary and ultimate test” of whether a law is an impermissible special or local law is whether the legislature has a reasonable basis for the classification used.
 
 Robinson v. Hill,
 
 507 S.W.2d 521, 525 (Tex.1974). The Cities say Senate Bill 348 should be held invalid for the same reason a statute authorizing the levy of a tax was held invalid in
 
 Miller v. El Paso County,
 
 136 Tex. 370, 150 S.W.2d 1000, 1001-02 (1941), namely that the attempted classification is not broad enough to include a substantial class and that it is instead merely an arbitrary device to give a local law the appearance of a general law.
 
 Id.
 

 The Cities say Senate Bill 348 applies only to D/FW Airport because it is the only airport in the state operated by a joint board consisting of more than one “populous home-rule city”
 
 [16]
 
 and that it is highly unlikely that any two other populous municipalities will operate an airport through a joint board at any time in the future. The Cities also argue that there is no apparent reason why the requirements of D/FW Airport are materially different from, for example, Houston Intercontinental Airport, which is not operated by a joint board and thus not subject to the provisions of Senate Bill 348. The Cities then cite several cases where this state’s highest courts have held unconstitutional statutes where the attempted classification was unreasonable and arbitrary or where it bore no reasonable relation to the objectives of the statute, including
 
 Smith v. Decker,
 
 158 Tex. 416, 312 S.W.2d 632, 636 (1958);
 
 Bexar County v. Tynan,
 
 128 Tex. 223, 97 S.W.2d 467, 469-70 (1936);
 
 Rodriguez v. Gonzales,
 
 148 Tex. 537, 227 S.W.2d 791, 794 (1950); and
 
 Ex parte Carson,
 
 143 Tex.Crim. 498, 159 S.W.2d 126, 128-29 (1942).
 

 The Board says Senate Bill 348 complies with Tex. Const, art. Ill, § 56 for two reasons: first, the classifications are rational and reasonable and the statute operates equally within the classifications; and second, the measure affects the entire state and operates on a subject in which the people of the state are interested.
 

 
 *466
 
 The Board relies upon the Statement of Legislative Intent submitted by the bill’s sponsor in arguing that the classification serves to identify large airports of statewide importance:
 

 Although the current problems which face DFW Airport have provided the immediate impetus for SB 348, the bill has been drafted broadly to apply not only to DFW Airport but also to other municipal airports which may in the future serve two or more populous home-rule municipalities. In this way, the bill attempts to avoid repetition of the destructive interlocal conflict which has plagued DFW Airport and its neighboring municipalities, without the necessity for additional legislation in the future after another such conflict has escalated to a point requiring legislative intervention.
 

 H.J. of Tex., 73rd Leg., R.S. 3758 (1993).
 

 The Board challenges the Cities’ assertion that Senate Bill 348 is unlikely to ever apply to any facility other than D/FW airport, noting the bill is tied to the census, and joint municipal airports will come within the bill’s provisions when their home-rule municipalities reach the threshold population. Specifically, the Board argues that Senate Bill 348 will apply to Midland/Odessa International Airport when the populations of Midland and Odessa each reach 400,000 and also that at times, the cities of Austin and San Antonio, each a home-rule municipality with a population of more than 400,000, have discussed the establishment of a joint airport.
 
 [17]
 

 The Board claims that the Cities, by arguing single-city airports such as Houston intercontinental Airport should have been included in Senate Bill 348, are asking this court to usurp the Legislature’s role. The Board says that a discussion of whether the bill could have been drafted more broadly is a separate issue from an examination of whether it was irrational for the Legislature to conclude that jointly-operated airports are regional in nature and thus more susceptible to local conflicts.
 

 Finally, the Board relies on
 
 Lower Colorado River Authority v. McCraw,
 
 125 Tex. 268, 83 S.W.2d 629, 636 (1935) for the proposition that a statute is not special or local, even though its enforcement is confined to a restricted area, if persons throughout the state are affected by it or if it addresses a subject that the people at large are interested in. The Board claims that congestion on the runways of D/FW Airport affects every Texas city served by the airport, every Texas city whose economy depends on the airport, the passengers and cargo which flow through the airport and the factories and offices it attracts.
 

 “There is a strong presumption that a Legislature understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based upon adequate grounds.”
 
 Smith v. Davis,
 
 426 S.W.2d 827, 831 (Tex.1968) (quoting
 
 Texas National Guard Armory Board v. McCraw,
 
 132 Tex. 613, 126 S.W.2d 627, 634 (1939)). A challenged statute will be presumed constitutional.
 
 Robinson,
 
 507 S.W.2d at 524;
 
 County of Cameron v. Wilson,
 
 160 Tex. 25, 326 S.W.2d 162, 166 (1959). A party asserting unconstitutionality has the burden of clearly demonstrating it.
 
 Robinson,
 
 507 S.W.2d at 524.
 

 Although at present, Senate Bill 348 may apply only to D/FW Airport, we find that its classification
 
 [18]
 
 is no more arbitrary than that in
 
 County of Cameron,
 
 where the Texas Supreme Court upheld a measure applicable to counties: (1) bordering on the Gulf of Mexico; (2) embracing within their boundaries an island or part of an island situated within the Gulf; which (3) are suitable for park purposes. The Court reasoned the statute permitting the issuance of bonds to improve park facilities was not a local or special law:
 

 The maintenance of public parks on islands in the Gulf of Mexico is undoubtedly a matter of interest to people throughout the State. The Gulf Coast is one of our most popular recreational areas. Each
 
 *467
 
 year large numbers of people from all parts of Texas and the United States avail themselves of the opportunities afforded there for fishing, boating and swimming in the ocean.
 

 County of Cameron,
 
 326 S.W.2d at 165.
 

 The Cities claim the statute is local or special because its classification is arbitrary, and yet they never respond to the Board’s argument that any measure affecting the operation or expansion of D/FW Airport cannot be a local or special law due to the statewide importance of the facility. There is no doubt about the significance of D/FW airport, not only statewide but also nationally and internationally. If ever a statute could be found not local or special “even though its enforcement or operation is confined to a restricted area,” because “persons or things throughout the State are affected thereby or if it operates upon a subject in which people at large are interested,”
 
 see id.
 
 (citing
 
 Lower Colorado River Authority,
 
 83 S.W.2d at 629), Senate Bill 348 is such a measure. The Board is also correct in pointing out that Senate Bill 348 may in the future apply to other jointly-operated airports.
 

 We do not agree with the Cities’ contention the statute is an unconstitutional attempt to repair a “perceived local problem with the host cities.” Given that the Board’s announced plans to expand the airport in the late 1980s led to changes in the zoning ordinances for three different municipalities, which in turn spawned litigation resulting in one trip to the Dallas Court of Appeals, two trips to the Texas Supreme Court and one trip to the Fort Worth Court of Appeals thus far, there clearly is a local problem with the host cities. However, the Legislature’s attempt to alleviate this problem does not place Senate Bill 348 into the realm of an unconstitutional local or special measure. Appellants’ fifth point of error is overruled.
 

 In their sixth point of error, the Cities complain Senate Bill 348 unconstitutionally deprives home rule cities of sovereignty and unconstitutionally transfers self-government power from one home rule city to another. Specifically, the Cities state that Senate Bill 348 “purports to grant powers to a ‘Superior Joint Board’ such as DFW Airport Board (and its underlying cities).”
 

 The Cities first note that two municipal corporations cannot contemporaneously exercise control over the same territory,
 
 City of Nassau Bay v. City of Webster,
 
 600 S.W.2d 905, 909 (Tex.Civ.App.—Houston [1st Dist.]),
 
 writ ref'd n.r.e. per curiam,
 
 608 S.W.2d 618 (1980), and that Texas home rule cities are equal under the provisions of the State Constitution.
 
 City of Houston v. City of Magnolia Park,
 
 115 Tex. 101, 276 S.W. 685, 689 (1925). The Cities also note that among the statutorily enumerated powers of a home-rule municipality is the right to zone.
 
 See
 
 Tex.Rev.Civ.StatAnn. art. 1175(26) (Vernon 1963). The Cities then argue that because Senate Bill 348 would allow D/FW Airport to expand without having to comply with local zoning ordinances, the measure strips the Cities of their sovereignty and transfers local self-government powers from the Cities to Dallas and Fort Worth by way of the joint board.
 

 In response, the Board notes that the State Constitution simultaneously grants authority to, and limits the authority of, home rule cities by including the following language:
 

 No charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State.
 

 Tex. Const, art. XI, § 5. The Board states that the Texas Supreme Court has repeatedly articulated the principle that the power of home rule cities is not supreme in matters of legislation and that it is at all times subject to limitations prescribed by the Legislature.
 

 The Board says that while the Cities may believe the right to zone is the essence of their status as home-rule cities, their essence is constitutionally defined as the right to pass any and all ordinances not inconsistent with the general laws of the state. It points out that the Legislature has, on a number of occasions, withdrawn the right to zone where the Legislature has found some particular type of zoning inimical to the public interest and relies on a number of examples, including: TexAlco.Bev.Code Ann. § 109.57(a) &
 
 *468
 
 (b) (Vernon 1995) (governing alcoholic beverage sales); Tex.Hum.Res.Code Ann. § 123.003 (Vernon Supp.1995) (covering community homes for disabled persons); Tex. Loc.Gov’t Code Ann. § 211.0035 (Vernon Supp.1995) (regarding pawnshops); and Tex. Health
 
 &
 
 Safety Code Ann. § 753.003(d) (Vernon 1992) (addressing self-service gas stations).
 

 The Board reiterates that the Home Rule Amendment requires only that a legislative limitation of the powers of home-rule cities take the form of a general law, not that it take the form of a law uniformly applicable to all home-rule cities. The Board contests the Cities’ reliance on
 
 Magnolia Park
 
 and other authorities they cite for their “equal dignity” argument.
 
 Magnolia Park, City of Houston v. State,
 
 142 Tex. 190, 176 S.W.2d 928 (1943) and
 
 Dallas Power & Light Co. v. Carrington,
 
 245 S.W. 1046 (Tex.Civ.App. 1922, writ dism’d) are annexation eases, where the appellate courts overruled one city’s ability to take the property of another’s. The Board claims that only one case relied upon by the Cities for the “equal dignity” argument,
 
 City of New Braunfels v. City of San Antonio,
 
 212 S.W.2d 817 (Tex.Civ.App.—Austin 1948, writ ref'd n.r.e.), even addressed the issue of whether the Legislature could grant regulatory powers to one home rule municipality within another’s territory and that in that case, where the Court expressed concern about such action, the Court admitted its language on that point was dicta because the constitutional issue was not before the Court.
 
 See New Braunfels,
 
 212 S.W.2d at 824-25. The Board asserts that the State may use a city as its agent in the discharge of its duties, citing
 
 Texas National Guard Armory Bd.,
 
 132 Tex. 613, 126 S.W.2d at 638 and concludes it was well within the Legislature’s prerogative to conclude that regulation of large-scale jointly operated airports would be better accomplished by the operating municipalities’ joint board.
 

 There is ample authority for the Board’s assertion that state law is superior to the zoning ordinances of home rule cities to the extent that the measures conflict, and that local ordinances are at all times subject to the limitations prescribed by the Legislature.
 
 See,
 
 for example,
 
 Dallas Merchant’s & Concessionaire’s Ass’n v. City of Dallas,
 
 852 S.W.2d 489, 491 (Tex.1993);
 
 City of Brookside Village v. Comeau,
 
 633 S.W.2d 790, 796 (Tex.),
 
 cert. denied,
 
 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982);
 
 Deacon v. City of Euless,
 
 405 S.W.2d 59, 62 (Tex.1966);
 
 Smith v. City of Dallas,
 
 163 S.W.2d 681, 683 (Tex.Civ.App.—Dallas 1942, writ ref'd).
 

 Additionally, the Board is on solid ground in distinguishing the present situation, where the Legislature reallocated the regulatoxy authority from the Cities over the property on which D/FW airport is located to the airport board from the annexation cases. Although the authorities relied upon by the Cities make it clear that one home-rule city cannot deprive another of its sovereignty, those authorities do not establish that the Legislature cannot partially withdraw the Cities’ home-rule authority over D/FW airport’s property and allow the Board to act as the Legislature’s agent in the regulation of the airport. In fact, the Cities never respond to the Board’s implicit argument that, because the Legislature may properly allow a
 
 city
 
 to act as its agent, the Legislature may properly allow an airport board, whose members are appointed by a city, to act as its agent. We see no reason that the Legislature could not so delegate that authority to the Board and find that Senate Bill 348 does not unconstitutionally transfer power from one home rule city to another because of the State’s power to allocate governmental functions among cities as it deems appropriate. Appellants’ sixth point of error is overruled.
 

 In their seventh point of error, the Cities claim Senate Bill 348 transfers governmental authority from one political subdivision to another in violation of Tex. Const, art. Ill, § 63(1) and 64(a). Those provisions bar the consolidation of certain governmental functions and offices without elections in the political subdivisions affected. The Cities argue that Senate Bill 348 precludes the Cities from exercising their governmental function within property owned by the cities of Dallas and Fort Worth and gives Dallas and Fort Worth the exclusive right to regulate the property within D/FW Airport. The Cities
 
 *469
 
 conclude that the measure effectively consolidated the governmental functions of the Cities without providing for a vote. In arguing this point, the Cities rely heavily on
 
 City of Weatherford v. Parker County,
 
 794 S.W.2d 33 (Tex.1990), where the Texas Supreme Court held that section 6.26 of the Texas Tax Code did not permit consolidation of assessing and collecting functions without an election. They also rely on
 
 Carrollton-Farmers Branch ISD v. Edgewood ISD,
 
 826 S.W.2d 489 (Tex.1992), where the creation of county school districts was not a violation of article III, section 64(a) because another provision of the Texas Constitution authorized the consolidation and abolition of school districts.
 

 The Board replies that Senate Bill 348 does not consolidate governmental functions of political subdivisions and is within the Legislature’s authority under article XI, section 5 because it does not consolidate any governmental functions which were previously exercised by the Cities and the Board or Dallas and Fort Worth but instead allows the Board to exercise those functions with respect to D/FW Airport property.
 

 Where the Legislature is given authority over the structure of local government under other constitutional provisions, that authority is not limited by article III, section 63(1) and section 64(a).
 
 Carrollton-Farmers Branch ISD,
 
 826 S.W.2d at 510-11. Article XI, section 5 states that general laws passed by the Legislature override the ordinances passed by home-rule municipalities. Appellants’ seventh point of error is overruled.
 

 The Cities complain in point of error eight that Senate Bill 348 contains more than one subject in violation of article III, section 35 of the Texas Constitution. Specifically, they argue that the measure, which included the description “An act relating to the control of certain airports, air navigation facilities and airport hazard areas,” also “creates an entity known as a ‘populous home rule municipality’ ” which, the Cities argue, “has absolutely no connection with the control of certain airports, air navigation facilities and airport hazard areas.”
 

 We agree with the Board, when it points out:
 

 The Legislature could instead have substituted the phrase “home rule municipality with a population of more than 400,000, according to the most recent federal census” everywhere the phrase “populous home-rule municipality” appears, but this would have accomplished nothing other than to make the bill more lengthy and confusing.
 

 It was not a violation of the Texas Constitution for the Legislature to provide a definition to make it easier to understand and apply the statute. Appellants’ eighth point of error is overruled.
 

 In point of error nine, the Cities argue that Senate Bill 348 violates section 5 of the Voting Rights Act of 1965
 
 [19]
 
 , which requires preclearance
 
 [20]
 
 for any change in election laws. The Cities claim that because Senate Bill 348 diminishes the ability of the Cities’ elected officials to regulate land use by allowing the Board to condemn additional property within the municipality
 
 [21]
 
 , Senate Bill 348 requires § 5 preelearance. The Cities rely on
 
 McCain v. Lybrand,
 
 465 U.S. 236, 104 S.Ct. 1037, 79 L.Ed.2d 271 (1983), which indicated that preclearance was needed for a change from appointed officials to elected officials, to argue that preclearance is needed when power is shifted from elected members of the Cities’ councils to the appointed members of the Board.
 

 The Cities also rely on
 
 Perkins v. Matthews,
 
 400 U.S. 379, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971), where the Supreme Court held that a city’s annexation of property required preclearance under the Voting Rights Act, to argue that preelearance is required in the
 
 *470
 
 instant case because Senate Bill 348 gives the Board the power to condemn property.
 

 The Board says
 
 Presley v. Etowah County Commission,
 
 502 U.S. 491, 112 S.Ct. 820, 117 L.Ed.2d 51 (1992) demonstrates that changes in the allocation of power among governmental bodies is not a change with respect to voting subject to preclearance. The Board argues that Senate Bill 348 has no impact on voting procedures, does not affect the manner of holding elections, does not alter or impose candidaey qualifications, leaves undisturbed the composition of the electorate and does not change the number of officials for whom the electorate may vote.
 

 At first blush, the Cities’ argument that Senate Bill 348⅛ provision allowing the Board to acquire land is akin to annexation requiring preelearance is a good one, but we find this action may be distinguished. This is not an annexation case, but instead is one where the Legislature has delegated to the Board the Cities’ power of eminent domain over the land on which D/FW airport is located.
 

 “The Legislature has delegated to home rule cities ‘exclusive dominion, control, and jurisdiction in, over and under the public streets, avenues, alleys, highways and boulevards’ within those cities.”
 
 Dallas/Fort Worth Airport,
 
 854 S.W.2d at 172-73. “Any limitation on the powers of a home rule city must appear with ‘unmistakable clarity’ and in ‘clear and compelling’ language.”
 
 Id.
 
 at 173 (citing
 
 Lower Colo. River Auth. v. City of San Marcos,
 
 523 S.W.2d 641, 645 (Tex.1975)). A home rule city’s power of eminent domain may be preempted, provided the Legislature is unmistakably clear and uses clear and compelling language.
 
 See Texas Turnpike Auth. v. Shepperd,
 
 154 Tex. 357, 279 S.W.2d 302, 305-06 (1955);
 
 State of Texas v. City of Denton,
 
 542 S.W.2d 224, 226 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.). We find the language of Senate Bill 348 is sufficiently clear and compelling.
 

 Senate Bill 348 gives joint boards the power to:
 

 [P]lan, acquire, establish, develop, construct, enlarge, improve, maintain, equip, operate, regulate, protect, and police any airport, air navigation facility, or airport hazard area to be jointly acquired, controlled, and operated. The joint board also may realign, alter, acquire, abandon, or close portions of roads, streets, boulevards, avenues, and alleyways, without a showing of paramount importance, if the portions to be realigned, altered, acquired, abandoned, or closed are within the geographic boundaries of the airport at the time of, or following, the realignment, alteration, acquisition, abandonment, or closing. Any taking of rights-of-way that occurs in the exercise of this power shall be compensated at fair market value.
 

 Tex.Rev.Civ.StatAnn. art. 46d-14(c) (Vernon Supp.1995). With this language, the Legislature delegated the power of eminent domain. In eminent domain eases, the requirement of preclearance has not been clearly established. As a result, Senate Bill 348 is not violative of the Voting Rights Act either for its failure to require preclearance prior to the Board’s acquisition of additional property or for the changes in allocation of power. Point of error nine is overruled.
 

 Because we have reviewed each of the bases for summary judgment put forth in the Cities’ and in the Board’s respective motions, and because we have found the Cities’ challenges to Senate Bill 348 to be without merit, we conclude the Board was entitled to summary judgment on the grounds put forth in its motion and the Cities were not. Points of error three and four are overruled.
 

 POINT OF ERROR TEN
 

 Finally, the Cities claim the trial court erred in awarding costs against them because they are governmentally immune from an award for costs and because the Board did not specifically seek them in its motion.
 

 The Board responds that the Texas Civil Practice and Remedies Code waives sovereign immunity as to the award of costs and attorneys’ fees under the Declaratory Judgment Act, and cites
 
 Texas Education Agency v. Leeper,
 
 37 Tex.Sup.Ct.J. 968, 977-79, 893 S.W.2d 432, 444-446 (1994).
 

 The Board’s motion for summary judgment did not need to include a prayer
 
 *471
 
 for costs, because Tex.R.Civ.P. 131 entitles the prevailing party to an award of costs regardless of whether they moved for them. Under
 
 Leeper,
 
 the Cities are not immune to the awarding of costs and fees in declaratory judgment actions. Accordingly, the Cities’ tenth point of error is overruled.
 

 The judgment of the trial court is affirmed.
 

 [1]
 

 .
 
 See Dallas/Fort Worth Int’l Airport Bd. v. City of Irving,
 
 854 S.W.2d 161, 164 (Tex.App.—Dallas 1993),
 
 judgment vacated without reference to merits,
 
 868 S.W.2d 750 (Tex.1993) (per curiam).
 

 [2]
 

 .
 
 See
 
 Affidavit of Jeffrey P. Fegan, attached to the Board's
 
 Supplemental Motion for Summary Judgment.
 

 [3]
 

 .
 
 Dallas/Fort Worth Airport,
 
 854 S.W.2d at 164.
 
 See also City of Fort Worth
 
 v.
 
 Corbin,
 
 504 S.W.2d 828, 829 (Tex.1974).
 

 [4]
 

 .
 
 Dallas/Fort Worth Airport,
 
 854 S.W.2d at 164.
 

 [5]
 

 .
 
 Id.
 

 [6]
 

 . D/FW Airport Director of Planning and Engineering Jeffrey Fegan says the expansion dates to 1987, the Cities claim the plan dates to 1988, and appellees put the date of the announcement at 1989.
 

 [7]
 

 .
 
 See Affidavit of Jeffrey P. Fegan,
 
 attached to the Board's
 
 Supplemental Motion for Summary Judgment.
 

 [8]
 

 . Tex. Const, art. XI, § 5.
 

 [9]
 

 .
 
 See
 
 Joint Exhibit 10A, p. 3-4.
 

 [10]
 

 .
 
 Dallas/Fort Worth Int’l Airport Bd. v. City of Irving,
 
 854 S.W.2d 161 (Tex.App.—Dallas 1993),
 
 judgment vacated without reference to merits,
 
 868 S.W.2d 750 (Tex.1993) (per curiam).
 

 [11]
 

 .
 
 See Affidavit of Jeffrey P. Fegan,
 
 attached to the Board’s
 
 Supplemental Motion for Summary Judgment.
 

 [12]
 

 .The Board states in its brief that between April 2, 1992 until the present cause of action was filed on June 8, 1993, no action was on file in any court seeking declaratory relief regarding the constitutionality of any portion of the Act. This claim is unchallenged by the Cities.
 

 [13]
 

 .
 
 See Dallas/Fort Worth Int’l Airport Bd. v. City of Irving,
 
 868 S.W.2d 750 (Tex.1993) (per curiam) ("
 
 DFW I").
 

 [14]
 

 . In its brief, the Board cites a Letter from Hon. Bill Rhea to All Counsel of Record in
 
 Dallas/Fort Worth Int’l Airport Bd. v. City of Irving,
 
 No. 90-4298-1 (Tex. 162nd Dist.Ct.) (June 7, 1994).
 

 [15]
 

 .
 
 See Dallas/Fort Worth Int’l Airport Bd. v. City of Irving,
 
 868 S.W.2d 750 (Tex.1993) ("DFW
 
 II").
 

 [16]
 

 . A "populous home-rule city” is defined by Senate Bill 348 as one whose population exceeds 400,000.
 

 [17]
 

 . The Board, in its brief at 25, cites Paula Moore,
 
 Airport Construction Projects Set for Takeoff,
 
 San Antonio Bus.J., Sept. 18, 1989, at 1.
 

 [18]
 

 . Senate Bill 348 applies to airports operated by joint boards consisting of more than one populous home-rule city.
 

 [19]
 

 .
 
 See
 
 42 U.S.C.A. § 1973c (West 1994).
 

 [20]
 

 . Preclearance may be obtained through a declaratory judgment action in the U.S. District Court for the District of Columbia or through the Attorney General of the United States.
 

 [21]
 

 .Under Senate Bill 348, the condemnation aggregate for an existing airport is limited to an amount equal to ten percent of the airport’s total size. In order to condemn a larger amount of land, Senate Bill 348 requires an airport board to obtain consent of the municipality.