**SOUTHWEST TRAVIS COUNTY WATER DISTRICT,**
Appellant,

v.

**CITY OF AUSTIN, Appellee.**

No. 03–97–00736–CV.

Court of Appeals of Texas,
Austin.

Jan. 6, 2000.

Released for Publication Feb. 10, 2000.

Bob E. Shannon, Baker & Botts, Austin, for appellant.

Renea Hicks, George, Donaldson & Ford, L.L.P., Austin, for appellee.

Before Justices KIDD, B.A. SMITH, and POWERS.

POWERS, Justice.

Southwest Travis County Water District (the "District") appeals from a judgment holding unconstitutional its constitutive statute in a declaratory judgment action brought by the City of Austin (the "City"). We will affirm the judgment.

## THE CONTROVERSY

The statute in controversy originated in the legislature as House Bill 3193 ("H.B. 3193"). *See* Act of May 26, 1995, 74th Leg., R.S., ch. 844, 1995 Tex.Gen.Laws 4243. The enactment creates the District, "a governmental agency and a body politic and corporate," pursuant to a legislative finding that the District "is essential to accomplish the purposes of Section 59, Article XVI," of the Texas Constitution.[1] § 1.01. The 4,661 acres enclosed by the District boundaries constitute an "island" surrounded entirely by land within the City's extraterritorial jurisdiction.[2] Four municipal utility districts ("MUDs") operate within the District boundaries.

The powers, rights, duties, and functions delegated to the District in H.B. 3193 are exercised by a board of nine directors (appointed by the governor) acting through a general manager as the chief executive officer of the District. §§ 2.01, .09. The District, subject to certain restrictions, may itself acquire, construct, and operate facilities for water, wastewater, drainage control, and disposal services; the District may store and sell water and contract to receive, treat, and dispose of water, wastewater, drainage, and wastes. §§ 3.08, .12–.13.

The District is also given the power to *regulate* within its boundaries. As needed, the District may devise comprehensive water, wastewater, and drainage-control plans; the plans must be consistent with water-quality standards adopted by the Texas Natural Resource Conservation Commission and are subject to certain restrictions. § 3.08. The District may by rule regulate "septic tanks to prevent water pollution or to protect the public health." § 3.09. With certain limitations, the District is vested with the power to regulate

---

1. The quotations, paraphrases, and attendant section numbers pertaining to H.B. 3193 are taken from the codified version of the statute. *See* Tex.Water Aux.Laws, Tables of Special Water Laws, Table III, p. 77 (West 1999). The relevant provisions of article XVI, section 59, of the Texas Constitution are discussed afterward in the opinion.

2. The "extraterritorial jurisdiction" of a municipality with a population over 100,000 individuals is the unincorporated area contiguous to meaningful boundaries and within five miles thereof. *See* Tex.Loc.Gov'tCode Ann. § 42.01 (West 1999). The City falls within this population category.

subdivisions within the District. The power is described as an

> *exclusive* power and jurisdiction, superseding the power and jurisdiction of any other local government, to approve a plat or replat required of a tract of land located within the district[;]

and such a plat or replat may not be filed with the county clerk until approved by the District and the county. § 3.10(a) (emphasis added). Nevertheless, the District may *not* regulate

> (1) the use of any building or property for business, industrial, residential, or other purposes;
>
> (2) the size, bulk, height, location, or number of buildings and other structures that may be constructed or the ratio of building area to land area;
>
> (3) the number of residential units that may be built; or
>
> (4) the size of yards, courts, other open areas, or the impervious cover that may be constructed on a tract of land.

§ 3.10(b).

Concerning MUDs located within District boundaries, the statute declares that creation of these MUDs "shall be regulated *only* by the" Texas Natural Resource Conservation Commission; and, "[t]he consent of the district or any local government or other political subdivision in the state *is not required* to create a municipal utility in the district." § 3.11 (emphasis added). Nevertheless, the District is vested with a measure of regulatory power over a MUD located within District boundaries, as follows:

> The district has *exclusive* authority to enforce, amend, or terminate the provisions of any agreement between or that applies to a municipal utility district located within the district and any local

government or other political subdivision in the state relating to:

> (1) land use or site plans;
>
> (2) restrictive covenants;
>
> (3) the provision of drainage and solid waste disposal services;
>
> (4) the regulation of septic tanks;
>
> (5) the control and abatement of water pollution;
>
> (6) the prohibition of pollution and policing of any source of water supply; or
>
> (7) the protection and policing of watersheds within the district.

§ 3.11(b) (emphasis added). The foregoing authority is said to supersede "the authority of any local government or other political subdivision in the state regarding the matters" stated, "other than the authority of a county to enforce, amend, or terminate an agreement in the public rights-of-way." § 3.11(c). Finally, as to MUDs within the District, H.B. 3193 declares void certain conditions or requirements imposed by a local government or other political subdivision if such conditions or requirements adversely affect matters upon which the MUDs have issued bonds. § 3.11(d).

While H.B. 3193 contains several other provisions pertaining to the operation of the District, the foregoing are sufficient to indicate the delegation of important regulatory powers to the District that abrogate or supersede like statutory powers delegated to the City as a home-rule city.

■ The trial court, in holding H.B. 3193 unconstitutional, was required to construe and apply the following constitutional provisions:

> The Legislature shall not, except as otherwise provided in the Constitution, pass any local or special law ... regulating the affairs of ... cities, towns, wards, or school districts; ... vacating ... roads,

town plats streets or alleys; relating to cemeteries, grave-yards or public grounds not of the State; ... and in all other cases where a general law can be made applicable, no local or special law shall be enacted.

Tex. Const. art. III, § 56.

Cities having more than five thousand (5000) inhabitants may ... adopt or amend their charters ... and no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State.

Tex. Const. art. XI, § 5.[3]

(a) The conservation and development of all of the natural resources of this State, including the control, storing, preservation and distribution of its storm and flood waters, the waters of its rivers and streams, for irrigation, powers and all other useful purposes ..., and the preservation and conservation of all such natural resources of the State are each and all hereby declared public rights and duties; and the Legislature shall pass all such laws as may be appropriate thereto;

(b) There may be created within the State of Texas, or the State may be divided into, such number of conservation and reclamation districts as may be determined to be essential to the accomplishment of the purposes of this amendment to the constitution, which districts shall be governmental agencies and bodies politic and corporate with such powers of government and with the authority to exercise such rights, privileges and functions concerning the subject matter of this amendment as may be conferred by law. ...

...

(e) Each special law creating a conservation and reclamation district shall comply with the provision of the general laws then in effect relating to consent by political subdivisions to the creation of conservation and reclamation districts and to the inclusion of land with the district.

Tex. Const. art. XVI, § 59.

Contending that a proper construction of the foregoing constitutional provisions entitled it to relief, the City sued the District for a declaratory judgment that H.B. 3193 is unconstitutional. Following a bench trial, the trial court struck down H.B. 3193 as unconstitutional on grounds set forth in findings of fact and conclusions of law. In our view, the District's appeal raises the following ultimate issues:

1. Is H.B. 3193 valid as a general law as opposed to a local or special law condemned by Article III, section 56 of the constitution, orchestrated with article XI, section five of that instrument?

2. If H.B. 3193 is a local or special law, is it nevertheless constitutional because authorized by Article XVI, section 59 of the constitution?

3. If parts of H.B. 3193 are unconstitutional, does the severability provision of section 7.04 require severance and continued enforcement of the valid parts?

■■■ We may state initially that our review is based upon the undisputed facts

---

**3.** The City, as a home-rule city, draws governing power from this provision of the constitution, and it is necessary to look to the acts of the legislature not for grants of power to such cities but only for limitations on their powers, whether substantive or procedural. *See Lower Colorado River Auth. v. City of San Marcos*, 523 S.W.2d 641, 643–44 (Tex.1975); *see also* Tex.Loc.Gov'tCode Ann. §§ 51.001–.079 (West 1999).

and the following precepts. We presume that H.B. 3193 is constitutional and enacted based upon any possible factual basis that will sustain its constitutionality. *See Texas Workers' Compensation Comm'n v. Garcia,* 893 S.W.2d 504, 520 (Tex.1995). We presume the legislature "understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based upon adequate grounds." *Texas Nat'l Armory Bd. v. McCraw,* 132 Tex. 613, 126 S.W.2d 627, 634 (1939). We must give a reasonable construction to any relevant constitutional provision and may not hold H.B. 3193 void unless it clearly appears to be in conflict with the constitution. *Neal v. Sheppard,* 209 S.W.2d 388, 389 (Tex.Civ. App.—Texarkana 1948, writ ref'd). Recourse to the whole of the constitution is required to ascertain the true meaning of a particular provision, and no part of the constitution should be treated as superfluous, meaningless, or inoperative. *Purcell v. Lindsey,* 158 Tex. 541, 314 S.W.2d 283, 284 (1958).

## WHETHER H.B. 3193 IS A GENERAL LAW

■ There can be no doubt that the legislature intended H.B. 3193 to operate exclusively within the extraterritorial jurisdiction of a single Texas municipality—that is the effect of the legal description fixing the District boundaries. *See* § 6.01. Is the statute saved from local-law status because "it operates upon a subject that the people at large are interested in[?]" *Lower Colorado River Auth. v. McCraw,* 125 Tex. 268, 83 S.W.2d 629, 636 (1935); *see City of Irving v. Dallas/Ft. Worth Int'l Airport Bd.,* 894 S.W.2d 456, 466 (Tex.App.—Fort Worth 1995, writ denied). The District advances several reasons why that is the case.

The first two reasons pertain to water quality. The District suggests that its operations encompass and affect an economically and scientifically important natural resource that benefits the State as a whole, namely the control and abatement of water pollution within an area covering the Barton Springs segment of the Edwards Aquifer; and a statewide interest also exists in that regard because the affected segment is vital to the survival of the Barton Springs salamander. (H.B. 3193 specifically authorizes the District to "provide for the protection and management of" such endangered species. § 3.01(c)(4)). The supreme court has distinguished *McCraw* and *City of Irving* on the ground that the statutes there in question affected a substantial class of persons *over a broad region* of the state as opposed to a statute that affected only a single MUD. *See Maple Run at Austin M.U.D. v. Monaghan,* 931 S.W.2d 941, 947–48 (Tex.1996). It may not reasonably be concluded that H.B. 3193 affects, with respect to the water-quality factor, a substantial class of persons over a broad region of the state as opposed to the single District created by H.B. 3193. *See, e.g., Vincent v. State,* 235 S.W. 1084, 1086 (Tex. Comm'nApp.1921, judgm't adopted); *City of Austin v. City of Cedar Park,* 953 S.W.2d 424, 435 (Tex.App.—Austin 1997, no writ).

The District suggests that the state as a whole has an interest in preserving the security for the publicly held debt of the four MUDs, which amounts in the aggregate to $40 million. The District reasons that the City's past restriction of development in the area has been inconsistent and so severe as to reduce land valuations below what is necessary to obtain tax revenue sufficient to discharge the indebtedness at a reasonable tax rate; and, the City's conduct in that regard is contrary to the planned development and expected

revenues upon which the bonds were approved by a state agency. We believe any statewide interest in the financial integrity of the four particular MUDs is as attenuated as the statewide interest in the financial condition necessary to conserve natural resources mentioned in *Maple Run. See Maple Run*, 931 S.W.2d at 946 n. 2.

■ The District contends that the State as a whole has an interest in reasonable "growth" within District boundaries because the State has expended more than $31 million in building roads within the District, and this sum will have been wasted "if the City is allowed to bring growth in the area to a standstill." We disagree with the theory. The purposes of State highways are transportation and travel *between* points on the State system of highways; and while those purposes are of statewide interest, they do not encompass the development of areas through which the highways pass. *See State of Tex. v. City of Austin*, 160 Tex. 348, 331 S.W.2d 737, 741 (1960); *Mosel v. Real*, 49 S.W.2d 475, 476 (Tex.Civ.App.—San Antonio 1932, writ ref'd).

Finally, the District argues that the legislature was justified in taking into account the City's inconsistent, ever-changing, and discriminatory regulation limiting development in the area covered by the District— for example, the applicable City ordinance requires that storm-water runoff have a lower nitrogen concentration than does bottled water sold in stores and a lower phosphorus concentration than the City's own tap water. Moreover, the District contends, the ordinance is discriminatory in that it applies to a part only of the aquifer-recharge zone lying within the City's jurisdiction. We believe these are simply aspects of the District's more general contention that the legislature was

justified in taking into account the years of intractable litigation that has plagued the question of development in the affected area.[4] *See City of Irving*, 894 S.W.2d at 466–67 (citing legislative history of statute that "attempts to avoid repetition of the destructive interlocal conflict which has plagued DFW Airport and its neighboring municipalities, without the necessity for additional legislation in the future after another such conflict has escalated to a point requiring legislative intervention."). We believe the District's contention reverses the reasoning involved. The "interlocal conflict" mentioned in *City of Irving* was of statewide interest because the operation of the airport *itself*, projected to handle increases in traffic to more than one hundred million passengers annually, was of statewide interest. *See id.* at 459–60. The existence of the "interlocal conflict" did not itself create the necessary statewide interest in the subject matter of the conflict.

The ultimate question is whether the legislature had a reasonable basis for singling out the District for special treatment. *See Maple Run*, 931 S.W.2d at 948. None of the reasons suggested by the District amount in our view to such a basis, considered singly or in the aggregate, for the reasons stated. We hold accordingly that H.B. 3193 is not a general law.

Anticipating our reliance on the *Maple Run* decision, the District argues that the decision does not apply to H.B. 3193 because the statute involved in *Maple Run* did not have a conservation purpose, it pertained to the dissolution rather than the creation of a governmental body, and the MUD in that case did not attempt to defend the constitutionality of its constitutive statute. We assume these distinctions

---

4. *See Quick v. City of Austin*, 7 S.W.3d 109 (Tex. 1998), *and reh'g granted*, 42 Tex.Sup. Ct.J. 1217 (Sept. 30, 1999), 1998 Tex.LEXIS 82 and 1999 Tex.LEXIS 110.

would preclude an application of the *holding* in *Maple Run* under the doctrine of stare decisis. They do not, however, preclude application of the principles and reasoning discussed by the supreme court in *Maple Run*, an opinion that was obviously intended to be an authoritative and instructive summary of the applicable judicial decisions and principles.

## WHETHER H.B. 3193 IS A PERMISSIBLE LOCAL LAW UNDER THE CONSTITUTION

■ As did the MUD in *Maple Run*, the District contends alternatively that H.B. 3193 is an authorized local law under article XVI, section 59 of the constitution. *See Maple Run*, 931 S.W.2d at 948–49. The constitutional provision authorizes the creation of conservation and reclamation districts by local law. *See id.* at 948.

Subsection (e) of article XVI, section 59, imposes an important qualification upon the legislative power to create such districts by local law, as follows:

> Each special law creating a conservation and reclamation district *shall comply with the provisions of the general laws then in effect relating to consent by political subdivisions to the creation of conservation and reclamation districts and to the inclusion of land within the district.*

Tex. Const. art. XVI, § 59(e) (emphasis added). In *Beckendorff v. Harris Galveston Coastal Subsidence Dist.*, 558 S.W.2d 75, 79 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.), the court held that the foregoing constitutional provision did not require that the local law itself incorporate the consent requirement mentioned; rather, the provision simply required compliance with "the general laws."

*Id.* The supreme court, in refusing writ of error, no reversible error, expressly approved this construction. *See Beckendorff v. Harris–Galveston Coastal Subsidence Dist.*, 563 S.W.2d 239, 240 (Tex.1978).

It is undisputed that the City has not consented to the creation of the District within its extraterritorial jurisdiction. The issue reduces to whether "the general laws" required such consent. The District contends *Beckendorff* settled that issue with the result that no general law required the City's consent.

The category of general laws includes the following provision found in the Local Government Code:

> Reduction of Extraterritorial Jurisdiction
>
> The extraterritorial jurisdiction of a municipality may not be reduced unless the governing body of the municipality gives its written consent by ordinance or resolution, except in cases [not applicable here].

Tex.Loc.Gov'tCode Ann. § 42.023 (West 1999). We hold this statute is applicable to the present controversy and required the City's consent as a matter of general law.[5]

Nothing in the *Beckendorff* opinion is contrary to our holding. There, the appellants argued that two specific provisions *of the Texas Water Code* were general-law provisions requiring consent by certain political subdivisions to the creation of the Harris–Galveston Coastal Subsidence District and the inclusion of land therein. Because these two provisions of the Texas Water Code were found only in a chapter of that code not applicable to the case, and the only applicable chapter imposed no

---

**5.** We need not consider whether section 42.042 of the Local Government Code is also a general-law statute applicable to the contro-versy. *See* Tex.Loc.Gov'tCode Ann. § 42.042 (West 1999).

consent requirement, the court held municipal consent was not required. *See Beckendorff,* 558 S.W.2d at 79. The *Beckendorff* opinion cannot reasonably be interpreted to mean that *no* statute requiring such consent exists in "the general laws"; rather, the opinion means simply that the two specific provisions of the Texas Water Code, *urged by appellants in that case,* did not require such consent because those particular provisions were not applicable to the kind of district there in litigation.

We therefore hold that H.B. 3193 is not constitutional as a local law authorized by article XVI, section 59 of the constitution.

Because we hold the trial court did not err in holding H.B. 3193 unconstitutional on the grounds set out above and under the undisputed facts, we need not address other contentions urged by the District as grounds for holding the trial court erred with regard to the constitutionality of the statute. And because the statute is unconstitutional in its *creation* of the District, for the reasons given, the trial court was not called upon to sever one part of the statute from another.

The District contends it is entitled to attorneys fees, based on stipulated facts, if we reverse the trial-court judgment. Because we affirm the judgment in its entirety, we need not decide the assignment of error.

We affirm the trial-court judgment.