

OFFICE *of the* ATTORNEY GENERAL

GREG ABBOTT

December 17, 2002

The Honorable Gary L. Walker
Chair, Committee on Land and
  Resource Management
Texas House of Representatives
P. O. Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0001

Re: Legal effects of groundwater conservation district election held in Bosque, Comanche, and Erath counties (RQ-0557-JC)

Dear Representative Walker:

You ask the status of a county that elects to join the Middle Trinity Groundwater Conservation District, but does not vote to grant taxing authority to the district.[1] As we read the act that created the district, that county is a part of the district. *See* Act of May 25, 2001, 77th Leg., R.S., ch. 1362, 2001 Tex. Gen. Laws 3371. However, the question of whether the district has taxing authority has not been resolved and cannot be resolved until the district as a whole has been polled. In the event that a majority of the district's voters generally approve the levying of a maintenance tax, then such a tax may be imposed upon the district as a whole. Moreover, whether certain counties "have expressed their desire to never call an election," *see* Request letter, *supra* note 1, at 2, is irrelevant. The act creating the district requires that "[t]he temporary board of directors *shall* call and hold *an election in each county in the district* to confirm establishment of the district and to elect initial directors to represent the county." Act of May 25, 2001, 77th Leg., R.S., ch. 1362, § 10(a), 2001 Tex. Gen. Laws 3371, 3372 (House Bill 3665) (emphasis added).

The district is a groundwater conservation district established pursuant to article XVI, section 59 of the Texas Constitution. Article XVI, section 59 declares the conservation and development of Texas's natural resources, including its water, to be a public right and duty; authorizes the creation of "such number of conservation and reclamation districts as may be determined to be essential" to the fulfillment of that duty; and allows the legislature to authorize a maintenance tax provided that "such proposition shall first be submitted to the qualified voters . . . and . . . adopted." TEX. CONST. art. XVI, § 59(a)-(c). The district was created by special law as a groundwater conservation district subject to a confirmation election "in Bosque, Callahan, Coryell, Eastland, Erath, Somervell, Comanche, and Hamilton counties" by House Bill 3665 of the Seventy-seventh

---

[1]*See* Letter from Honorable Gary L. Walker, Chair, Committee on Land and Resource Management, to Honorable John Cornyn, Texas Attorney General (May 23, 2002) (on file with Opinion Committee) [hereinafter Request Letter].

Texas Legislature. Act of May 25, 2001, 77th Leg., R.S., ch. 1362, § 1(a), 2001 Tex. Gen. Laws 3371. The act states:

> The district has all of the rights, powers, privileges, authority, functions, and duties provided by the general law of this state, including Chapter 36, Water Code, applicable to groundwater conservation districts created under Section 59, Article XVI, Texas Constitution.

*Id.* § 5.

A confirmation election is required by section 10 of the act. *See id.* § 10, at 3372. If the creation of the district is not confirmed before September 1, 2003, the act creating the district expires on that date. *See id.* § 14(b). Such an election need not be held on a uniform date, but otherwise "must be conducted as provided by Sections 36.017(b)-(h), Water Code, and the Election Code." *Id.* § 10(d). The statute contemplates the possible imposition of a maintenance tax, *see id.* § 12,[2] but its election provisions speak only of a confirmation and initial election of directors, the sole provision for a maintenance tax proposition being made by reference to the provisions of article 36.017 of the Water Code. *See id.* § 10(d).

Before its amendment by the Seventy-seventh Legislature, section 36.017(d) of the Water Code provided that the ballot language for the confirmation election include both the confirmation of the district and the authorization to levy the tax as part of a single proposition. *See* Act of May 29, 1995, 74th Leg., R.S., ch. 933, § 2, sec. 36.017(d), 1995 Tex. Gen. Laws 4673, 4682. Under that system, it would not have been possible to vote simultaneously in favor of the creation of the district yet against the maintenance tax. However, Senate Bill 2 of the Seventy-seventh Legislature revised section 36.017(d) so that the two propositions became independent of each other and added subsection (i), which provides:

> If *a majority of the votes* cast at the election are against the levy of a maintenance tax, the district shall set production fees to pay for the district's regulation of groundwater in the district, including fees based on the amount of water to be withdrawn from a well.

TEX. WATER CODE ANN. § 36.017(i) (Vernon Supp. 2003) (emphasis added).

In the instant case, confirmation elections have been held in three of the counties that were, pursuant to House Bill 3665, included within the district – Bosque, Erath, and Comanche counties. *See* Request Letter, *supra* note 1, at 1. We note at the outset a problem here which is, along with the revision of section 36.017(d), at the root of the difficulties presented. Section 10(a) of House Bill

---

[2]Section 12 provides: "The board of directors may impose taxes annually to pay the maintenance and operating expenses of the district at a rate not to exceed five cents on each $100 of assessed valuation." Act of May 25, 2001, 77th Leg., R.S., ch. 1362, § 12, 2001 Tex. Gen. Laws 3371, 3372.

3665 requires that the district's statutorily appointed "temporary board of directors *shall* call and hold *an election* in each county in the district to confirm establishment of the district and to elect initial directors to represent the county." Act of May 25, 2001, 77th Leg., R.S., ch. 1362, § 10(a), 2001 Tex. Gen. Laws 3371, 3372 (emphasis added).

The language of section 10(a) specifically requires "an election" in each county, not a series of elections. While the phrase "an election in each county in the district" might in isolation be read to permit one election per county, when it is read in context and in light of the legislative history of the statute, we conclude that it contemplates a single district-wide election in all counties on a single date, rather than piecemeal county-by-county elections. First, the act requires the "temporary board of directors," as an entity, not individual county directors or county commissioners courts, to call this election. That "an election . . . to confirm establishment of the district," not multiple elections should be held, is also clear from the legislative history. As the bill analysis states: "The bill sets forth provisions regarding *an election* to confirm the establishment of the district." HOUSE COMM. ON NATURAL RESOURCES, BILL ANALYSIS, Tex. H.B. 3665, 77th Leg., R.S. (2001) (enrolled version) (emphasis added). Further, in reading statutory language, we are to presume that a reasonable result and one feasible of execution is intended. *See* TEX. GOV'T CODE ANN. § 311.021(3)-(4) (Vernon 1998). As is illustrated in the instant case, and as we detail further below, the consequence of reading this act to permit piecemeal elections would be the creation of a "district" the borders, constituents, and authority of which remained uncertain until the last such election was held. Had the temporary directors as a body called a single election, many of the problems you identify for us would have been obviated.

When the election was held in the three counties, a majority of the voters in Bosque County voted against confirmation. *See* Request Letter, *supra* note 1, at 1. A majority of the voters of Erath County voted both to confirm the district and to authorize the maintenance tax. *See id.* In Comanche County, the voters favored confirmation of the district, but a majority disapproved the maintenance tax proposition. *See id.*

You ask about the consequences of the elections that have been held. We note, as a preliminary matter, that generally the right to hold an election depends upon statutory authorization, *See Countz v. Mitchell*, 38 S.W.2d 770, 774 (Tex. 1931), *Setliff v. Gorrell*, 466 S.W.2d 74, 77 (Tex. Civ. App.–Amarillo 1971, no writ); Tex. Att'y Gen. Op. No. DM-172 (1992) at 2, and that it might therefore be argued that the elections already held – a series of elections, rather than the single one contemplated by the statute – are invalid. However, courts generally are reluctant to invalidate elections because when elections are untainted by fraud or improper conduct, "it becomes the duty of courts to sustain them, where it can be done by a liberal construction of the laws relating to elections, rather than defeat them by requiring rigid conformity to law." *Des Champ v. Featherston*, 886 S.W.2d 536, 540 (Tex. App.–Austin 1994, no writ) (citation omitted). Accordingly, we presume the validity of the three elections already held.

Under House Bill 3665, the existence of the Middle Trinity Groundwater Conservation District has been confirmed. Both Erath and Comanche counties are included in the district. Pursuant to section 10(e) of House Bill 3665, "[t]he district is established if a majority of the votes

cast at the election *in at least one county* favors the establishment of the district." Act of May 25, 2001, 77th Leg., R.S., ch. 1362, § 10(e), 2001 Tex. Gen. Laws 3371, 3372 (emphasis added). As you inform us, the voters of both Erath and Comanche counties have confirmed the district. *See* Request Letter, *supra* note 1, at 1. Accordingly the district is established. Further, under subsection (e), "[a] county is included in the district and may elect directors to the board only if a majority of the votes cast at the election in that county favors the establishment of the district." Act of May 25, 2001, 77th Leg., R.S., ch. 1362, § 10(e), 2001 Tex. Gen. Laws 3371, 3372. The voters of Bosque County rejected the establishment of the district. *See* Request Letter, *supra* note 1, at 1. Accordingly, Bosque County does not form part of the district. However, both Erath and Comanche counties, in which a majority of the voters have voted for the district's establishment, are part of the district pursuant to section 10(e).

However, neither the extent of the district nor its authority to levy a maintenance tax is as yet clear. Only after the temporary board has called an election in the remaining counties and the results of that election are known can these questions be answered. Had the directors called an election on confirmation on a single date in every county of the district, its boundaries and taxing authority would be clear. The counties that voted for the district's establishment by majority would constitute the district under section 10(e), particularly given that the section states that "[c]ounties included in the district are not required to be contiguous." Act of May 25, 2001, 77th Leg., R.S., ch. 1362, § 10(e), 2001 Tex. Gen. Laws 3371, 3372. The electorate of those counties as a whole would determine, by majority vote, pursuant to section 36.017(d) of the Water Code, whether a maintenance tax might be imposed. *See* TEX. CONST. art. XVI, § 59; TEX. WATER CODE ANN. § 36.017(d) (Vernon Supp. 2002). Until an election has occurred in the five remaining counties, however, these questions cannot be answered.

The question of the board's taxing authority is one for the district as a whole. A district created pursuant to article XVI, section 59 of the Texas Constitution is a "governmental agenc[y] and bod[y] politic and corporate." TEX. CONST. art. XVI, § 59. The Middle Trinity Groundwater Conservation District has "all of the rights, powers, privileges, authority, functions, and duties . . . applicable to groundwater conservation districts created under Section 59," including the right to impose a maintenance tax with the consent of the voters of the district. Act of May 25, 2001, 77th Leg., R.S., ch. 1362, § 5(a), 2001 Tex. Gen. Laws 3371. Under article XVI, section 59, any maintenance tax must be approved by the voters. The procedures for that vote are not, as we have noted, made explicit in House Bill 3665, although section 12 of the act allows for such an imposition. *See id.* § 12, at 3372. Accordingly, we must find the authority to obtain voter approval of a maintenance tax, as well as district confirmation, in section 36.017 of the Water Code. The identity and will of those voters in this regard has, however, not yet been determined.

Only when all counties have voted will the boundaries and taxing authority of the district be established. If a majority of the voters in the district as a whole vote for the imposition of a maintenance tax, then the taxing authority has been granted. Thus, the mere fact that a majority of the voters of one county within the district have voted against the maintenance tax does not mean that the tax may not be imposed upon them if a majority of the district's voters ultimately grant the

taxing power to the district. Nor may the tax be imposed as yet in the two district member counties that have voted so far, because the question of the board's taxing authority has not yet been decided.

Finally, you ask about the procedure for removal of temporary directors in a county that does not hold the election. *See* Request Letter, *supra* note 1, at 2. However, the calling of the confirmation election is mandated by the statute, and it is not within the directors' discretion to leave any county out of the canvass. You note that "at least two counties have expressed their desire to never call an election." *Id.* We presume that such expression comes from the commissioners courts of the counties at issue. *See Nueces County v. De Pena*, 953 S.W.2d 835, 836-37 (Tex. App.–Corpus Christi 1997, no pet.) (county acts only through commissioners court). However, the calling of a confirmation election is not within the power of a commissioners court, nor is it a matter of the temporary board's discretion. The language of section 10(a) of House Bill 3665 is mandatory: "The temporary board of directors shall call and hold an election in each county in the district . . . ." Act of May 25, 2001, 77th Leg., R.S., ch. 1362, § 10(a), 2001 Tex. Gen. Laws 3371, 3372. *See* TEX. GOV'T CODE ANN. § 311.016(2) (Vernon 1998) ("'Shall' imposes a duty."). Further, if the suggestion here is that necessary consent by the counties to House Bill 3665 was not granted, the "enrolled bill" rule requires us to assume that any consent required of the various counties under article XVI, section 59(e) of the Texas Constitution has been granted. *See Beckendorff v. Harris-Galveston Coastal Subsidence Dist.*, 558 S.W.2d 75, 78 (Tex. Civ. App.–Houston [14th Dist.] 1977, writ ref'd n.r.e.); Tex. Att'y Gen. Op. No. JC-0170 (2000). Further, we are aware of no general law contravened by House Bill 3665 that would render the statute unconstitutional under section 59(e). *Cf. Southwest Travis County Water Dist. v. City of Austin*, 64 S.W.3d 25 (Tex. App.–Austin 2000, no pet.). Because the counties cannot refuse to hold the election, the question of the removal of temporary directors does not arise.

## S U M M A R Y

The existence of the Middle Trinity Groundwater Conservation District in some form has been confirmed. Bosque County does not form part of the district, while Erath and Comanche counties do. The extent and taxing authority of the district remain indeterminate until the election mandated by the statute creating the district is held in Callahan, Coryell, Eastland, Hamilton, and Somervell counties.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

James E. Tourtelott
Assistant Attorney General, Opinion Committee