11th
Court of Appeals

                                                                  Eastland,
Texas

                                                             Memorandum
Opinion

 

Barney Barnett

Appellant

Vs.                   No. 11-02-00114-CV B Appeal from Collin County

Legacy Bank of Texas and Elaine Edinger

Appellees

 

Legacy
Bank of Texas brought this action against Barney Barnett seeking to recover for
breach of two limited guaranty agreements that Barnett signed in connection
with loans that Legacy Bank made to Coppell North Texas Court, Ltd. (Coppell
North).[1]  Barnett filed a counterclaim against Legacy
Bank, alleging claims for breach of contract, fraud, negligent
misrepresentation, promissory estoppel, quantum meruit, and unjust
enrichment.  The trial court granted
summary judgment to Legacy Bank on its claims for Barnett=s breach of the limited guaranty agreements
and on Barnett=s claims. 
Barnett filed a third-party claim against Elaine Edinger, an employee of
Legacy Bank, alleging claims for fraud and negligent misrepresentation.  The trial court granted summary judgment to
Edinger on Barnett=s
claims.  In this appeal, Barnett asserts
that the trial court erred in granting summary judgment to Legacy Bank and
Edinger and in denying summary judgment to him on his claims against Legacy
Bank and Edinger.  We affirm.

                                                                Background
Facts    

Coppell
North, as owner, and Barnett, as contractor, entered into a contract for the
construction of the North Texas Family & Sports Center (the Project).  Legacy Bank made two Small Business
Administration (SBA) loans to Coppell North to fund the construction.  In connection with the loans, Coppell North
signed two promissory notes in the principal amounts of $1,105,000 and
$705,000, and Barnett signed limited guaranty agreements guaranteeing payment
of a total of 4 percent of the outstanding balance of principal and interest on
the notes.  








Barnett
began construction of the Project.  Per
the agreement of the parties, Barnett submitted periodic Adraw@ requests to Legacy Bank seeking payment for work performed during
construction.  Legacy Bank funded the
loans to Coppell North by paying Adraw@ requests that it approved.  Barnett=s fourth Adraw@ request included a change order that would
increase construction costs for the Project by $354,732.  Coppell North sought additional funding from
Legacy Bank to cover the cost reflected in the change order.  Barnett claims that Edinger told him that
Legacy Bank had approved the change order and would loan funds to Coppell North
to cover the increased cost. Edinger claims that she never told Barnett that
Legacy Bank would loan additional funds to Coppell North.  Legacy Bank did not loan the additional
funds to Coppell North.    

In the
meantime, Barnett continued to work on the Project.  He submitted a total of nine Adraw@ requests. 
Legacy Bank paid Barnett=s Adraw@ requests until the two loans were fully funded. Legacy Bank paid the
first through the seventh Adraw@ requests and a portion of the eighth Adraw@ request but did not pay the remainder of the eighth Adraw@ request or the ninth Adraw@ request. 
Barnett claims that he could not complete construction of the Project
because of Legacy Bank=s
failure to pay the remainder of the eighth Adraw@ request and the ninth Adraw@ request. 

Coppell
North defaulted on the notes, and Legacy Bank sought to foreclose on the
property.  On December 6, 1999, Barnett
d/b/a Superior Built Construction filed suit against Legacy Bank in the 68th
Judicial District Court of Dallas County, Cause No. DF99-09520-C.  Barnett alleged breach of contract and fraud
claims based upon Edinger=s alleged representations that Legacy Bank had approved the change
order and that the Adraw@ requests would be paid. 

On January
10, 2000, Legacy Bank filed this suit. 
Barnett moved to transfer venue of this cause to Dallas County on the
ground that this cause involved the same facts and circumstances as his
earlier-filed Dallas County cause. 

On June 6,
2000, Legacy Bank foreclosed on the property.  
The property sold for $1,675,000, resulting in a deficiency to Legacy
Bank of over $325,000.  








On August
3, 2000, Barnett filed a motion to abate this cause asserting that, because the
subject matter of this cause was inherently interrelated to the subject matter
of the earlier-filed Dallas County cause, the trial court was required to abate
this action.  On the same date, Barnett
filed his counterclaim in this cause alleging claims against Legacy Bank
arising from Edinger=s
alleged misrepresentations.  On
September 7, 2000, the trial court denied Barnett=s motion to transfer venue and motion to abate.[2]     

Legacy
Bank and Barnett both filed motions for summary judgment.  In separate orders, the trial court (1)
granted Legacy Bank summary judgment on its claims for breach of the two
guaranty agreements, (2) granted Legacy Bank summary judgment on Barnett=s counterclaims, and (3) denied Barnett
summary judgment on his claims.  Barnett
then filed a third-party claim against Edinger for alleged fraud and negligent
misrepresentation.  Edinger and Barnett
both filed motions for summary judgment on these claims.  In separate orders, the trial court granted
Edinger summary judgment and denied Barnett summary judgment.   

                                                                  Issues
Presented

Barnett
presents ten issues for appellate review. 
In his first eight issues, he complains that the trial court erred in
granting summary judgment to Legacy Bank and Edinger for various reasons.  In his ninth issue, he asserts that the
trial court erred in granting summary judgment to Edinger because she is
personally liable for any tortious conduct that she committed.  In his tenth issue, Barnett asserts that the
trial court erred in denying his motion to transfer and consolidate and his
motion to abate.

                                                Summary
Judgment Standard of Review








Legacy
Bank, Edinger, and Barnett filed traditional motions for summary judgment.  We will apply the well-recognized standard
of review for traditional summary judgments. We must consider the summary judgment
evidence in the light most favorable to the non-movant, indulging all
reasonable inferences in favor of the non-movant, and determine whether the
movant proved that there were no genuine issues of material fact and that the
movant was entitled to judgment as a matter of law.  Nixon v. Mr. Property Management Company, Inc., 690 S.W.2d
546 (Tex.1985); City of Houston v. Clear Creek Basin Authority, 589
S.W.2d 671 (Tex.1979).  To prevail as a
defendant, the movant must negate, as a matter of law, one or more elements of
each of the plaintiff=s
causes of action or prevail, as a matter of law, on a defense as to each of the
plaintiff=s causes of action.  American Tobacco Company, Inc. v. Grinnell, 951 S.W.2d
420, 425 (Tex.1997).  When a defendant
moves for summary judgment based on an affirmative defense, the defendant bears
the burden of proving each element of the affirmative defense.  Ryland Group, Inc. v. Hood, 924
S.W.2d 120, 121 (Tex.1996); Swilley v. Hughes, 488 S.W.2d 64, 67
(Tex.1972).  If the movant establishes
the defense, then, to defeat summary judgment, the non-movant must come forward
with summary judgment evidence establishing the existence of a fact issue (1)
on the movant=s affirmative defense or (2) on a defense to
the movant=s affirmative defense.   AMoore@ Burger, Inc. v. Phillips Petroleum Company, 492 S.W.2d 934, 936-37 (Tex.1972); Torres
v. Western Casualty and Surety Company, 457 S.W.2d 50 (Tex.1970).

                                                     The
Summary Judgment Evidence








Barnett=s affirmative defenses and affirmative claims
for relief are based on Legacy Bank=s alleged promise to loan additional funds to Coppell North to cover
the cost of the change order.  In an
affidavit, Barnett asserted: (1) that his fourth Adraw@ request included a change order that
increased the total cost of the Project by $354,732; (2) that, in January 1999,
Edinger and Steve Young, another employee of Legacy Bank, told him that the
change order had been approved; (3) that Legacy Bank subsequently paid the
fourth Adraw@ request; (4) that the fifth, sixth, and seventh Adraw@ requests each reflected the change order in the amount of $354,732 and
the revised total cost for the project of $2,314,732; (5) that Legacy Bank paid
the fifth, sixth, and seventh Adraw@ requests; (6) that, on or about May 15,
1999, Barnett submitted his eighth Adraw@ request in the amount of $72,002; (7) that
Edinger represented that there was a slight delay in funding the eighth Adraw@ request because a signature had been mistakenly omitted when the
change order had been approved, but that the omission was just a
technicality;  (8) that Edinger stated
that the Aeighth@ draw request would be paid in a few weeks; (9) that Edinger asked
Barnett and his subcontractors to continue construction; (10) that Edinger told
him that, if the other lender did not fund the loan, Legacy Bank would provide
the additional financing; (11) that, in reliance on Edinger=s representations, Barnett and his
subcontractors continued construction; 
(12) that Edinger stated that the other lender had changed some of the
loan terms and that the changes were not acceptable to Legacy Bank and Coppell
North; (13) that Edinger stated that a new lender would be found or, if another
lender could not be found, that Legacy Bank would provide the additional financing;
(14) that his understanding, based upon Edinger=s and Young=s
representations, was that Legacy Bank was promising to sign written documents,
or had already done so, that would evidence the increased loan amount; (15)
that he submitted his ninth Adraw@ request to Legacy Bank in June of 1999; (16)
that Edinger represented that Legacy Bank would pay the outstanding draw
requests and again requested that he and his subcontractors continue
construction; (17) that Legacy Bank only paid him the sum of $20,000 toward the
amount due on the eighth Adraw@ request, leaving an unpaid balance of
$52,002, and that Legacy Bank never paid the ninth draw request in the amount
of $345,265; and (18) that Barnett was forced to stop construction on the
Project in July 1999 because of Legacy Bank=s failure to pay the Adraw@ requests. 

Barnett
also presented excerpts from the deposition of David J. Lewis as summary
judgment evidence.  Lewis testified that
Edinger told him that Legacy Bank had approved the change order and that, if
PMC Capital, Inc. would not loan the additional funds, then Legacy Bank would
loan the additional funds or find another lender to loan the funds. 








In her
affidavit, Edinger stated, in part, as follows: (1) that she never represented,
stated, or told Barnett that any change order was approved for payment and
would be paid; (2) that any change orders required the approval of Legacy Bank=s Officer=s and Director=s Loan
and Discount Committees, the SBA, PMC, and North Texas Certified Development
Corporation (CDC); (3) that she never indicated, stated, represented,
suggested, or implied to Barnett that Legacy Bank was promising to sign written
documents, or had already done so, that would evidence an increased loan amount
in connection with the Project; (4) that there was a requested change order
that resulted from  Lewis of Coppell
North telling her that he did not have enough money to complete the Project
because of an increase in the cost of concrete; (5) that Legacy Bank was
willing to approve the change order arising from the increased cost of
concrete, but only subject to approval by (a) the SBA (inasmuch as a portion of
this loan was guaranteed by the SBA), (b) PMC, the secondary market lender
(inasmuch as PMC had already committed to buy the first lien), and (c) CDC, a
privately-owned SBA funding source; (6) that she repeatedly explained to Lewis
and Barnett that Legacy Bank=s approval of the change order was subject to these additional
approvals; (7) that Legacy Bank did not obtain approvals of the change order
from the SBA, PMC, and CDC; (8) that, at the time the change order was
proposed, the Project was already in excess of budget, Legacy Bank had funded
both notes, and both notes were in default for failure of payment; (9) that she
advised Lewis that he would have to come up with approximately $400,000 to
finish the Project and that Legacy Bank would not loan additional funds to
Coppell North to finish the Project; (10) that she told Lewis and Barnett that
Legacy Bank would not loan additional funds to Coppell North; (11) that,
throughout the entire process, she repeatedly advised Barnett that Legacy Bank
needed secondary market-lending-source approval to loan the additional funds;
(12) that Barnett told her that he understood; (13) that, when that approval
was not forthcoming, she told Barnett and Lewis immediately; and (14) that the
Project was no more than 60 percent complete at the time the loans were fully
funded. 

                                    Barnett=s Contract Claims and Defenses

In his
first issue, Barnett asserts that the trial court erred in granting summary
judgment to Legacy Bank and Edinger on his breach of contract claims and
defenses.  In his sixth and seventh
issues, Barnett argues that the trial court erred in concluding that the
statute of frauds barred his contract claims. 
Barnett claims that Legacy Bank agreed to loan Coppell North an amount in
excess of $300,000 to cover the cost reflected in the change order.  The statute of frauds set forth in TEX. BUS.
& COM. CODE ANN. '
26.02(b) (Vernon 2002) provides:

A loan
agreement in which the amount involved in the loan agreement exceeds $50,000 in
value is not enforceable unless the agreement is in writing and signed by the
party to be bound or by that party=s authorized representative.

 

Thus, the agreement
alleged by Barnett is subject to Section 26.02(b) because it was a loan agreement
in which the amount involved exceeded $50,000. 
Barnett asserts, however, that TEX. BUS. & COM. CODE ANN. ' 26.02 (Vernon 2002) does not bar his
contract claim for four reasons:  (1)
Legacy Bank=s representatives signed a writing complying
with the statute of frauds; (2) the statute of frauds does not preclude
evidence of subsequent oral modifications to the original loan agreements
because the agreements were not integrated; (3) the doctrine of promissory
estoppel prevents Legacy Bank from asserting the statute of frauds defense; and
(4) the doctrine of partial performance precludes Legacy Bank from asserting
the statute of frauds defense.








It is not
necessary that a contract itself be in writing to satisfy the statute of
frauds.  Rather, the statute of frauds
requires that there be a written memorandum which is complete within itself in
every material detail and which contains all of the essential elements of the
agreement, so that the contract can be ascertained from the writings without resorting
to oral testimony.  Cohen v.
McCutchin, 565 S.W.2d 230, 232 (Tex.1978); Maginn v. Norwest Mortgage,
Inc., 919 S.W.2d 164, 167 (Tex.App. B Austin 1996, no writ).  Barnett
relies on a written AModification
to Loan Application@ that
was initialed by two Legacy Bank employees. 
The AModification to Loan Application@ provided that A[t]his modification is being requested to increase the bank=s total commitment to [Coppell North] by
$288,787.@  It
also provided that, while Legacy Bank had internally approved the modification
to increase the loan amount, the modification was subject to the approval of
the SBA, CDC, and PMC.     

In Maginn,
borrowers alleged that a lender breached a contract to loan them money.  They asserted that a written memorandum
satisfied the statute of frauds.  The
court of appeals held that the memorandum did not satisfy the statute of
frauds:

The statute of frauds [Section 26.02]
requires the written agreement or memorandum to be complete within itself in
every material detail and to contain all of the essential elements of the
agreement so that the contract can be ascertained from the writings without
resort to oral testimony. 

 

The Moss
memorandum contains neither a promise, an agreement, nor a commitment to
loan....Having examined the Afour corners@ of
the document, we conclude as a matter of law that the [writing] does not
satisfy the statute of frauds. 
(Citation omitted)

 

Maginn v. Norwest
Mortgage, Inc., supra at
167.

In this
case, the AModification to Loan Application@ did not contain a promise, an agreement, or
a commitment to loan.  Rather, it
expressly conditioned the loan modification on the approval of the SBA, CDC,
and PMC.  It did not satisfy the statute
of frauds.  See Maginn v. Norwest
Mortgage, Inc., supra at 167.

Barnett
relies on Digby v. Texas Bank, 943 S.W.2d 914 (Tex.App. B El Paso 1997, writ den=d), in arguing that the statute of frauds did
not apply to Legacy Bank=s agreement to loan additional funds because the original agreements
were not integrated.  The Digby court
determined that the security agreement and note before it were not integrated
and, therefore, did not preclude consideration of parol evidence suggesting the
existence of oral modifications made after the original writings.  Digby v. Texas Bank, supra at
928-29.  








Digby is distinguishable from this case for at
least two reasons.  In this case, the
alleged modification involved an agreement to loan an amount in excess of
$50,000.  When a modification
encompasses a matter required by the statute of frauds to be in writing, the
modification is unenforceable unless it is in writing.  Garcia v. Karam, 276 S.W.2d 255, 257
(Tex.1955).  The alleged modification,
standing alone, was subject to Section 26.02(b) and was, therefore,
unenforceable. 

Additionally,
in this case, the original loan agreements were integrated.  Section 26.02(e) of the Business and
Commerce Code requires that written loan agreements involving more than $50,000
contain a Amerger@ clause.  See Maginn v.
Norwest Mortgage, Inc., supra at 168.  Section 26.02(e) provides: 


[T]he financial institution shall give notice
to the debtor or obligor of the provisions of Subsections (b) and (c) of this
section.  The notice must be in a
separate document signed by the debtor or obligor or incorporated into one or
more of the documents constituting the loan agreement....The notice must state
substantially the following:

 

This
written loan agreement represents the final agreement between the parties and
may not be contradicted by evidence of prior, contemporaneous, or subsequent
oral agreements of the parties. 

 

There are
no unwritten oral agreements between the parties.  (Footnote omitted)    

 

Legacy Bank complied with
Section 26.02(e).  It provided the
required notice to Coppell North and Barnett. 
Coppell North and Barnett signed (1) disclaimers of oral agreements in
connection with both loans that included the language required by Section 26.02(e)
and (2) a construction loan agreement that included the language required by
Section 26.02(e).  The  security agreement in Digby did not
contain such a Amerger@ clause.  Also, in this case,
Section 8.02 of the construction loan agreement provided as follows:

Entire
Agreement and Modifications.  The Loan Documents constitute the entire
understanding and agreement between the undersigned with respect to the
transactions arising in connection with the Loan and supersede all prior
written or oral understandings and agreements between the undersigned in
connection therewith.  No provision of
this Agreement or the other Loan Documents may be modified, waived, or
terminated except by instrument in writing executed by the party against whom a
modification, waiver, or termination is sought to be enforced. 








   

In this case, the
language in the agreements establishes that they were intended to be the final,
integrated agreements of the parties. 
The reasoning of Digby does not apply.        

Barnett raised promissory
estoppel as a defense to Legacy Bank=s claim that the statute of frauds bars his contract claim.  The elements of promissory estoppel are: (1)
a promise; (2) forseeability of reliance thereon by the promisor; and (3)
substantial reliance by the promisee to his detriment.  English v. Fischer, 660 S.W.2d 521,
524 (Tex.1983).  Promissory estoppel
precludes a statute of frauds defense in two situations: (1) where the promise
to be enforced is the signing of a written agreement complying with the statute
or (2) where there is reliance on a misrepresentation that the statute has been
satisfied.  AMoore@ Burger, Inc. v. Phillips Petroleum Company, supra at  937; Ford v. City State Bank of Palacios, 44 S.W.3d 121,
139 (Tex.App. B Corpus Christi 2001, no pet=n); Collins v. Allied Pharmacy Management,
Inc., 871 S.W.2d 929, 936-37 (Tex.App. B Houston [14th Dist.] 1994, no writ). 
In the summary judgment context, Barnett had the burden to raise a fact
issue on his promissory estoppel defense. 
See AMoore@ Burger, Inc. v. Phillips Petroleum Company, supra at 936-37; Birenbaum v.
Option Care, Inc., 971 S.W.2d 497, 504 (Tex.App. B Dallas 1997, no pet=n). 
In his affidavit, Barnett stated that, based upon Edinger=s and Young=s representations, his understanding was Athat the Bank was promising to sign written documents, or had already
done so, that would evidence the increased loan amount.@ 
However, there is no summary judgment evidence (1) that any Legacy Bank
employee represented that Legacy Bank would sign a written agreement complying
with the statute of frauds or (2) that Legacy Bank promised or agreed to sign
an agreement complying with the statute of frauds.  Barnett=s
statement as to Ahis understanding@ is no evidence that Legacy Bank either
promised to sign a written agreement that complied with the statute of frauds
or misrepresented that the statute of frauds had been satisfied.  Barnett did not raise a fact issue on his
promissory estoppel defense.








Barnett asserts that the
statute of frauds does not apply to his contract claims and defenses because he
partially performed under the contract. 
Contracts that have been partially performed, but do not meet the
requirements of the statute of frauds, may be enforced in equity if denial of
enforcement would amount to a virtual fraud. 
Carmack v. Beltway Development Company, 701 S.W.2d 37, 40
(Tex.App. B Dallas 1985, no writ).  The fraud arises when there is strong
evidence establishing the existence of an agreement and its terms; when the
party acting in reliance on the contract has suffered a substantial detriment
for which he has no adequate remedy; and when the other party, if permitted to
plead the statute, would reap an unearned benefit.  Exxon Corporation v. Breezevale Limited, 82 S.W.3d 429,
439 (Tex.App. B Dallas 2002, pet=n den=d)(citing Carmack v. Beltway Development Company, supra.)  The partial performance must be Aunequivocally referable to the agreement and
corroborative of the fact that a contract actually was made.@ 
Exxon Corporation v. Breezevale Limited, supra at 439 (citing Wiley v. Bertelsen,
770 S.W.2d 878, 882 (Tex.App. B  Texarkana 1989, no writ), and Chevalier
v. Lane=s, Inc., 213 S.W.2d 530, 533-34 (Tex.1948)). 
The acts of performance relied upon to take a parol contract out of the
statute of frauds must be such as could have been done with no other design
than to fulfill the particular agreement sought to be enforced; otherwise, they
do not tend to prove the existence of the parol agreement relied upon by the
plaintiff. Exxon Corporation v. Breezevale Limited, supra at 439-40
(citing Teague v. Roper, 526 S.W.2d 291, 293 (Tex.Civ.App. B Amarillo 1975, writ ref=d n.r.e.), and Francis v. Thomas, 106
S.W.2d 257, 260 (Tex.1937)).

Barnett
claims that he continued working on the Project based on Legacy Bank=s promise to loan the additional funds.  However, Barnett=s contract with Coppell North required him to
perform the construction work on the Project. 
Barnett=s work could be referable to his contract
with Coppell North.  There is no
evidence that his services were Aunequivocally referable@ to Legacy Bank=s alleged promise to loan additional funds.  See Exxon Corporation v. Breezevale Limited, supra
at 440.  Barnett did not raise a fact
issue on his partial performance defense.

The
statute of frauds bars Barnett=s contract claims and defenses. 
Barnett=s first, sixth, and seventh issues are
overruled.  

                         Barnett=s Fraud and Negligent Misrepresentation
Claims and Defenses








In his
second issue, Barnett asserts that the trial court erred in granting summary
judgment to Legacy Bank and Edinger on his fraud and negligent misrepresentation
claims.  The elements of a cause of
action for fraud are: (1) a material representation was made; (2) which was
false; (3) which was either known to be false when made or was asserted without
knowledge of its truth; (4) which was intended to be acted upon; (5) which was
relied upon; and (6) which caused injury. 
Formosa Plastics Corporation USA v. Presidio Engineers and
Contractors, Inc., 960 S.W.2d 41, 47 (Tex.1998); De Santis v. Wackenhut
Corporation, 793 S.W.2d 670, 688 (Tex.1990).  To establish a fraud claim based on a promise of future
performance, a party must prove that the promise was made with no intention of
performing at the time it was made.  Formosa
Plastics Corporation USA v. Presidio Engineers and Contractors, Inc., supra
at 48 (citing Schindler v. Austwell Farmers Cooperative, 841 S.W.2d 853,
854 (Tex.1992)).

The
well-established standards for reviewing a summary judgment require that we
take Barnett=s affidavit as true, indulge every reasonable
inference in his favor, and resolve any doubts in his favor.  Nixon v. Mr. Property Management Company,
Inc., supra at 548-49. 
Barnett=s fraud claim is based on Edinger=s representations that Legacy Bank had
approved the change order and would loan the additional funds to Coppell North
to cover the cost of the change order if the other lender would not loan the
funds.  Legacy Bank=s alleged promise that it would loan
additional funds if another lender did not loan the funds was a promise of
future performance.  There is no summary
judgment evidence that Edinger, or any other Legacy Bank employee, made a
promise to loan additional funds with no intention of performing the promise at
the time that it was made.  Barnett did
not raise a fact issue on the third element of his fraud claim.  








The
elements of a cause of action for negligent misrepresentation are: (1) a
representation was made by a defendant in the course of his business or in a
transaction in which he has a pecuniary interest; (2) the defendant supplied Afalse information@ for the guidance of others in their
business; (3) the defendant did not exercise reasonable care or competence in
obtaining or communicating the information; and (4) the plaintiff suffered a
pecuniary loss by justifiably relying on the representation.  Federal Land Bank Association of Tyler v.
Sloane, 825 S.W.2d 439, 442 (Tex.1991). 
Significantly, the sort of Afalse information@ contemplated in a negligent misrepresentation case is a misstatement
of Aexisting fact,@ not a promise of future conduct. 
Allied Vista, Inc. v. Holt, 987 S.W.2d 138, 141 (Tex.App. B Houston [14th Dist.] 1999, pet=n den=d)(citing Airborne Freight Corporation, Inc. v. C.R. Lee
Enterprises, Inc., 847 S.W.2d 289, 294 (Tex.App. B El Paso 1992, writ den=d)). 
Barnett=s negligent misrepresentation claims and
fraud claims are based on the same representations.  Edinger=s
alleged representation that Legacy Bank would loan additional funds if another
lender did not loan the funds was a promise of future conduct.  There is no summary judgment evidence that
any Legacy Bank employee misstated an existing fact.  Barnett failed to raise a fact issue on the Afalse information@ element of his negligent misrepresentation
claim.  Barnett=s second issue is overruled.    

                         Barnett=s Unjust Enrichment and Quantum Meruit Claims
and Defenses

In his
third issue, Barnett argues that the trial court erred in granting summary
judgment to Legacy Bank and Edinger on his unjust enrichment and quantum meruit
claims and defenses.  A party may
recover under an unjust enrichment theory when another party has obtained a
benefit from it by fraud, duress, or the taking of an undue advantage.  Heldenfels Brothers, Inc. v. City of
Corpus Christi, 832 S.W.2d 39, 41 (Tex.1992).  The party seeking to recover under an unjust enrichment theory
must show that the benefit or profit to the other party was Aunjust@ under principles of equity.  Zapata
Corporation v. Zapata Gulf Marine Corporation, 986 S.W.2d 785, 788
(Tex.App. B Houston [1st Dist.] 1999, no pet=n). 
Barnett asserts that the additional construction work that he performed
in reliance on Edinger=s
representations increased the value of the property and, therefore, that Legacy
Bank received more for the property at the foreclosure sale.  Thus, Barnett contends that Legacy Bank was
unjustly enriched as a result of his work. 
However, the foreclosure sale resulted in a deficiency in excess of
$325,000 to Legacy Bank.  In light of
the substantial deficiency, Legacy Bank was not unjustly enriched.  Additionally, even if Legacy Bank benefitted
to some extent from Barnett=s services, the benefit was not Aunjust@ under the principles of equity. 

Quantum
meruit is an equitable theory of recovery which is based on an implied
agreement to pay for benefits received. 
Heldenfels Brothers, Inc. v. City of Corpus Christi, supra
at 41 (citing Vortt Exploration Company, Inc. v. Chevron U.S.A., Inc.,
787 S.W.2d 942, 944 (Tex.1990)).  To
recover under a quantum meruit theory, the plaintiff must establish that: (1)
valuable services or materials were furnished, (2) to the party sought to be
charged, (3) which were accepted by the party sought to be charged, and (4)
under such circumstances as reasonably notified the recipient that the
plaintiff, in performing, expected to be paid by the recipient.  Heldenfels Brothers, Inc. v. City of
Corpus Christi, supra.  

Barnett=s contract with Coppell North required him to
build the Project.  Barnett claims that
his construction work benefitted Legacy Bank by increasing the value of the
property.  Although his construction
work may have benefitted Legacy Bank to some extent, such a benefit would not
permit Barnett to recover against Legacy Bank under a quantum meruit theory.  It is well settled that: 








No one can legally claim compensation
for...incidental benefits and advantages to one, flowing to him on account of
services rendered to another by whom the [services provider] may have been
employed. 

 

Bashara v. Baptist
Memorial Hospital System,
685 S.W.2d 307, 310 (Tex.1985)(quoting Landman v. State, 97 S.W.2d 264,
265 (Tex.Civ.App. B El
Paso 1936, writ ref=d)).  Any benefits flowing to Legacy Bank from
Barnett=s services to Coppell North were
incidental.  Barnett=s third issue is overruled.

                                         Barnett=s Claims Against Edinger

In his
ninth issue, Barnett asserts that Edinger is personally liable on his fraud and
negligent misrepresentation claims. 
Because we have held that the trial court=s grant of summary judgment to Legacy Bank and Edinger was proper on
Barnett=s fraud and negligent misrepresentation
claims, Barnett=s ninth issue is overruled.

                                            Venue
and Abatement Issues 

In his
tenth issue, Barnett argues that the trial court abused its discretion in
denying his motion to transfer venue and consolidate and his motion to abate
this cause because the subject matter of this cause is inherently interrelated
to the subject matter of his earlier-filed Dallas County suit.  To succeed on his plea in abatement, Barnett
had the burden to allege and prove: (1) the Dallas County suit was commenced
first; (2) it was still pending; (3) the same parties were involved; and (4)
the controversies were the same.  In
re Sims, 88 S.W.3d 297, 303 (Tex.App. B San Antonio 2002, no pet=n)(citing Southern County Mutual Insurance Company v. Ochoa, 19
S.W.3d 452, 468 (Tex.App. B Corpus Christi 2000, no pet=n)).  








When the
subject matter of two suits is inherently interrelated, the trial court is
required to grant a timely plea in abatement in the later-filed action.  Wyatt v. Shaw Plumbing Company, 760
S.W.2d 245, 247  (Tex.1988).  Courts consider two factors in determining
whether the subject matter of two suits is inherently interrelated: (1) whether
the claim alleged in the second suit could be classified as a compulsory
counterclaim to the first action and (2) whether the parties in the second
action were Apersons to be joined if feasible.@ Wyatt v. Shaw Plumbing Company, supra
at 247; City of Irving, Texas v. Dallas/Fort Worth International Airport
Board, 894 S.W.2d 456, 463 (Tex.App. B Fort Worth 1995, writ den=d).  If the claim in the second
suit is not a compulsory counterclaim to the first action, the trial court is
not required to abate the second action. 
City of Irving, Texas v. Dallas/Fort Worth International Airport
Board, supra at 463.     

A
counterclaim is compulsory if it meets the following elements: (1) it is within
the jurisdiction of the court; (2) it is not, at the time of filing the answer,
the subject of a pending action; (3) the action is mature and owned by the pleader
at the time of filing the answer; (4) it arises out of the transaction or
occurrence that is the subject matter of the opposing party=s claim; (5) it is against an opposing party
in the same capacity; and (6) it does not require for its adjudication the
presence of third parties over whom the court cannot acquire jurisdiction.  TEX.R.CIV.P. 97(a); Wyatt v. Shaw
Plumbing Company, supra at 247.  


Legacy
Bank asserts that the two suits did not arise out of the same transaction or
occurrence.  Generally, the courts apply
a logical relationship test to determine what constitutes a transaction or
occurrence.  A counterclaim is
compulsory under this test if the same essential facts are significantly and
logically relevant to both claims.  See
Community State Bank v. NSW Investments, L.L.C., 38 S.W.3d 256, 258
(Tex.App. B Texarkana 2001, pet=n dism=d w.o.j.); Jack H. Brown & Company, Inc. v. Northwest Sign
Company, Inc., 718 S.W.2d 397, 400 (Tex.App. B Dallas 1986, writ ref=d n.r.e.).  The issue whether
two lawsuits arise out of the same transaction or occurrence is largely left to
the trial court=s discretion.  White v. Rupard, 788 S.W.2d 175, 178 (Tex.App. B Houston [14th Dist.] 1990, writ den=d).








In the
Dallas County suit, Barnett sought to enjoin Legacy Bank from foreclosing on
the property.  He alleged breach of
contract and fraud claims against Legacy Bank based on Edinger=s alleged representations that Legacy Bank
would provide additional funding to pay his Adraw@ requests. 
In this suit, Legacy Bank sought to recover on the two promissory notes
and the guaranty agreements related to those notes.  Barnett did not dispute that Legacy Bank funded these notes.  Rather, Barnett=s claims in the Dallas County suit were based
on representations that he alleged occurred months after the execution of the
promissory notes and guaranty agreements. 
In his brief, Barnett asserts that his Adefenses, counterclaims and third party claims arise from the Bank=s and Edinger=s activity separate from and independent of Barnett=s guaranty obligations arising from his 4%
limited guaranty.@  Barnett=s claims are based on different facts and occurrences than those of
Legacy Bank.  Therefore, Legacy Bank=s claim against Barnett was not a compulsory
counterclaim.  See Goins v. League
Bank and Trust, 857 S.W.2d 628, 630 (Tex.App. B Houston [1st Dist.]1993, no writ).

Because
Legacy Bank=s claim could not be classified as a
compulsory counterclaim, the  subject
matter of the two suits was not inherently interrelated.  Thus, the trial court was not required to abate
this cause.  City of Irving, Texas v.
Dallas/Fort Worth International Airport Board, supra at 463.  The trial court did not abuse its discretion
in denying Barnett=s
motion to transfer venue and consolidate and motion to abate.  Barnett=s tenth issue is overruled.

                                                             Barnett=s Other Issues

In Barnett=s fourth, fifth, and eighth issues, he argues
that the trial court erred in granting summary judgment because: Legacy Bank
failed to seek the additional approvals for the loan; the waiver provision in
the guaranty agreements that Barnett signed does not apply to his claims and
defenses; and Barnett did not have to be in privity with Legacy Bank to recover
on his fraud and negligent misrepresentation claims.  We need not address these issues because they are not necessary
to the final disposition of the appeal. 
See TEX.R.APP.P. 47.1. 

                                                                This
Court=s Ruling 

The
judgment of the trial court is affirmed. 

 

W. G.
ARNOT, III

CHIEF
JUSTICE

 

October 16, 2003

Not designated for
publication.  See TEX.R.APP.P.
47.2(a).

Panel consists of: Arnot, C.J., and

Wright, J., and McCall, J.











     [1]Legacy Bank also alleged claims against Coppell North
and five other guarantors or unlimited guarantors of the notes, including NTC
Lewis, Inc.; North Texas Gymnastics Academy, Inc.; David J. Lewis; Wanda M.
Lewis; and Sang Cha. 





     [2]Later, Legacy Bank settled with Coppell North, NTC
Lewis, Inc.; North Texas Gymnastics Academy, Inc.; David J. Lewis; and Wanda M.
Lewis.  Legacy Bank obtained a default
judgment against Sang Cha.  Thus,
Barnett remained as the only defendant.